763 A.2d 777 (2000)
CITY OF CAMDEN, a Municipal Corporation of the State of New Jersey, Appellants,
v.
Jane KENNY, Commissioner of the New Jersey Department of Community Affairs of the State of New Jersey, The Local Finance Board, Ulrich Steinberg, Director of the Division of Local Government Services and Norton Bonaparte, Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 2000.
Decided December 22, 2000.
*778 Marc A. Riondino, Acting City Attorney, argued the cause for appellant.
Daniel P. Reynolds, Senior Deputy Attorney General, argued the cause for respondents (John J. Farmer, Jr., Attorney General of New Jersey, attorney; Mary Jacobson, Assistant Attorney General, of counsel; Mr. Reynolds, Keith A. Costil, Senior Deputy Attorney General, on the brief).
Before Judges KING, COBURN and LANDAU.
The opinion of the court was delivered by KING, P.J.A.D.

I
This is an accelerated appeal by the City of Camden (City) from the action of the Local Finance Board (LFB). In a resolution of September 29, 2000 the LFB adopted an order issued on September 22 by the Director of the Division of Local Government Services of the Department of Community Affairs authorizing the appointment of Norton N. Bonaparte, Jr. as the City's business administrator.
The LFB authorized appointing Bonaparte through its authority under the "Local Government Supervision Act of 1947," N.J.S.A. 52:27BB-1 to -100 (Supervision Act). The City has been under supervision pursuant to the Supervision Act, N.J.S.A. 52:27BB-54, since May 10, 2000 because of its "unsound financial condition." According to the Attorney General, the Supervision Act has only been invoked a half-a-dozen times in its 52-year history and has never been challenged in court. The City does not claim that the Supervision Act is inapplicable in its current financial circumstances. Rather, the City contends the LFB and the Director have, in this instance, exceeded their powers under the Supervision Act and violated long-standing traditions of "home rule" and local autonomy. We disagree and affirm the LFB's power to appoint a new business administrator.

II
On April 14, 2000 the LFB conducted a hearing and evaluated the financial condition of the City. After hearing testimony, the LFB adopted a resolution requesting that the Attorney General file an application to obtain a judicial determination that "gross failure[s]" by the City "substantially jeopardizes the fiscal integrity of the municipality." N.J.S.A. 52:27BB-55(6). Upon such a determination, the LFB could initiate action pursuant to N.J.S.A. 52:27BB-56 to determine whether the City should be placed under the Board's supervision pursuant to the Supervision Act.
The Attorney General filed such an action for a judicial determination on April 18, 2000. On May 5, Judge Orlando heard argument and issued a ruling in favor of the LFB, finding specifically that:

*779 the undisputed facts show that defendant City of Camden has grossly failed to comply with the Local Fiscal Affairs Law and the Local Budget Law, and that this gross failure has substantially jeopardized the fiscal integrity of the City of Camden.
The LFB then promptly conducted a hearing on May 10 to consider whether the City should be placed under its supervision pursuant to Article 4 of the Supervision Act, N.J.S.A. 52:27BB-54 to -95.1. The LFB adopted a resolution on the same date placing the City under supervision. The elaborate resolution recited the judicial determination of "gross failure" and invoked the myriad powers under the Act, including the section dealing with personnel, N.J.S.A. 52:27BB-66.1, the appointment and dismissal power over municipal employees in an effort to rectify the City's financial problems.
Upon the adoption of the resolution, it was submitted to the State Treasurer, the Attorney General, and the Commissioner of the Department of Community Affairs for review and approval in accordance with N.J.S.A. 52:27BB-56. Immediately, on May 10, all three cabinet officers approved the LFB's action and the resolution became effective. The City took no appeal from this final decision. The LFB's supervision ensued.
On September 13, pursuant to N.J.S.A. 52:27BB-66.1, the LFB adopted a resolution directing that the procedures in this statute be implemented to provide for the appointment of a new business administrator. The City's present administrator, Preston Taylor, had decided to resign on October 31. The September 13 resolution firmly but politely recited the LFB's "expectation" and design, in pertinent part, as follows:
WHEREAS, in adopting the aforementioned resolution, the Local Finance Board specifically provided that the provisions of N.J.S.A. 52:27BB-66.1 were to be placed in effect in the City of Camden; and
WHEREAS, the provisions of N.J.S.A. 52:27BB-66.1 set forth procedures providing for the appointment of municipal employees within municipalities subject to the supervision of the Local Finance Board under Article 4 of the Local Government Supervision Act, N.J.S.A. 52:27BB-54 et seq., and
WHEREAS, the Local Finance Board has determined it to be both necessary and appropriate to authorize and direct that the procedures set forth at N.J.S.A. 52:27BB-66.1 be utilized for the purpose of making a permanent appointment to the position of business administrator in the City of Camden; and
WHEREAS, THE Local Finance Board's determination in this regard is premised upon its consideration of a variety of circumstances relating to the present fiscal condition of the City of Camden including, but not limited to, the decision of the present business administrator of the City of Camden to resign as of October 31, 2000; and
WHEREAS in light of these circumstances and in order to facilitate the rehabilitation of the financial affairs of the City of Camden, the Local Finance Board has determined to authorize and direct that the procedures set forth in N.J.S.A. 52:27BB-66.1 pertaining to the appointment of municipal employees in the City of Camden be utilized for the purpose of providing for the permanent appointment of a business administrator in the City; and
WHEREAS, the Local Finance Board has further determined that the actions required to be taken for the purpose of providing for the permanent appointment of a business administrator in the City of Camden be undertaken and completed by September 22, 2000; and
WHEREAS, in authorizing and directing that the procedures set forth in N.J.S.A. 52:27BB-66.1 be undertaken and completed by that date, it is the expectation of the Local Finance Board *780 that the governing body of the City of Camden will work in a cooperative manner with the Director of the Division of Local Government Services for the purpose of providing for a permanent appointment to the position of business administrator in the City of Camden; and
WHEREAS, it is also the expectation of the Local Finance Board that the implementation of the procedures set forth in N.J.S.A. 52:27BB-66.1 will be undertaken to provide for the permanent appointment of Norton Bonaparte as the business administrator of the City of Camden,
NOW, THEREFORE, BE IT RESOLVED, that the Local Finance Board, pursuant to its authority under N.J.S.A. 52:27BB-66.1 of Article 4 of the Local Government Supervision Act, N.J.S.A. 52:27BB-54 et seq., hereby authorizes and directs that the procedures set forth in N.J.S.A. 52:27BB-66.1 pertaining to the appointment of municipal employees in the City of Camden be implemented for the purpose of providing for this permanent appointment of a business administrator in the City of Camden to replace the City's present business administrator; and
BE IT FURTHER RESOLVED, that the Local Finance Board has further determined that the actions required to be taken for the purpose of providing for the permanent appointment of a business administrator in the City of Camden be undertaken and completed by September 22, 2000; and
BE IT FURTHER RESOLVED, that, in authorizing and directing that the procedures set forth in N.J.S.A. 52:27BB-66.1 be undertaken and completed by that date, it is the expectation of the Local Finance Board that the governing body of the City of Camden will work in a cooperative manner with the Director of the Local Government Services for the purpose of providing for a permanent appointment to the position of business administrator in the City of Camden. [Emphasis added.]
On September 22, the City Council, in defiance of the LFB's resolution of September 13, voted to approve the appointment of Mayor Milton Milan's selection, Heriberto Colon, as business administrator, and not to appoint Bonaparte. Upon learning of this action, the Director, acting pursuant to N.J.S.A. 52:27BB-66.1, on September 22 issued an order to the City terminating Colon's status and directing that Bonaparte be appointed business administrator; the order stated in full:
ORDER OF THE DIRECTOR OF THE DIVISION OF LOCAL GOVERNMENT SERVICES
TO: MAYOR AND CITY COUNCIL OF THE CITY OF CAMDEN
This order is being issued pursuant to my authority under N.J.S.A. 52:27BB-66.1 and N.J.S.A. 52:27BB-60 of Article 4 of the Local Government Supervision Act and constitutes an order and directive of the Director of the Division of Local Government Services for the purposes of those statutes as well as N.J.S.A. 52:27BB-15.
As you are aware, the Local Finance Board adopted a resolution on September 13, 2000 for the purpose of authorizing that the procedures set forth in N.J.S.A. 52:27BB-66.1 be utilized for the purpose of making a permanent appointment to the position of business administrator in the City of Camden. In doing so, the Local Finance Board made clear its expectation that the actions to be taken pursuant to its resolution would provide for the permanent appointment of Norton Bonaparte as business administrator of the City of Camden. The Board's resolution accordingly authorized that the procedures set forth in N.J.S.A. 52:27BB-66.1 be implemented for the purpose of providing for "this appointment" to be made.
The City Council has, in disregard of the Local Finance Board's resolution of September 13, 2000, taken action to appoint *781 an individual other than Norton Bonaparte to the position of business administrator of the City. In doing so, the City Council has acted in clear contravention of the Board's resolution. More specifically, the individual which the City Council has sought to place in this position, Heriberto Colon, is not the individual which the Board's resolution authorized be permanently appointed as the City's business administrator.
The rehabilitation of the City's financial affairs is the very reason why supervision of the City of Camden by the Local Finance Board and the Division of Local Government Services has been placed in effect under Article 4 of the Local Government Supervision Act. Norton Bonaparte possesses the requisite qualifications and experience to effectuate the financial rehabilitation of the City's financial affairs while serving as the City's business administrator. As Director of the Division of Local Government Services and Chairman of the Local Finance Board, it is clear to me and, as the Board's resolution of September 13, 2000 makes clear, to the Board that Mr. Bonaparte's appointment to the position of business administrator of the City is necessary to achieve this purpose. Moreover, it was the only appointment authorized under the Board's resolution.
In light of the foregoing, it is hereby ordered and directed that, pursuant to my authority under N.J.S.A. 52:27BB-66.1 and N.J.S.A. 52:27BB-60 and the resolution adopted by the Local Finance Board on September 13, 2000, whatever status the governing body may have sought to confer upon Heriberto Colon as business administrator of the City of Camden is hereby terminated. Further, pursuant to my authority under the aforementioned statutes and resolution, it is hereby ordered and directed that Norton Bonaparte is hereby appointed as business administrator of the City of Camden effective October 2, 2000.
Consistent with the provisions of N.J.S.A. 52:27BB-15, the City of Camden may seek review of this order before the Local Finance Board by requesting such review in accordance with the provisions of that statute. Should the City fail to seek review within the time period set forth therein, it will be precluded from seeking to challenge this order in any other forum.
 /s/_______________
 ULRICH H. STEINBERG, JR.,
 DIRECTOR
 DIVISION OF LOCAL GOVERNMENT
 SERVICES
The City's attorney requested immediate relief from this order from the LFB. In response, the LFB conducted a hearing on September 29 to review the Director's order. The LFB concluded that the Director's order was a proper implementation of the LFB's earlier resolution of September 13. The LFB also expressed its view that because of experience, qualifications and expertise, the appointment of Bonaparte was necessary to achieve rehabilitation of the City's financial affairs.
The City appealed on September 29; we denied a stay and accelerated the appeal. Meanwhile, the State applied to Judge Orlando for enforcement on October 25; on November 2 he enforced the Director's order appointing Bonaparte as business administrator.

III
The City contends that the State "does not have the power to appoint a business administrator for a municipality pursuant to the Supervision Act." We disagree. The order of the director on September 22, confirmed by the LFB's resolution of September 29, was squarely authorized by the second paragraph of N.J.S.A. 52:27BB-66.1 which states, "The board may authorize the municipality to appoint or dismiss unclassified persons in managerial positions necessary to the rehabilitation of the financial affairs of the *782 municipality without regard to any procedural or other statutory requirements." The business administrator was clearly an unclassified person in a managerial position. The City's brief quite properly describes the business administrator as the "chief operating officer" of the municipality who is "directly accountable to the mayor." This is the City's key management position, essential to any meaningful reform.
As a general proposition, properly exercised state power over municipalities trumps local control. "As creatures of the state, local governments are generally subject to the control of the state. There is a corresponding presumption that state legislation creating a state agency preempts local government control." 1 EUGENE McQUILLIN, MUNICIPAL CORPORATIONS § 3A.19 (3d ed.1999). "Legislative authority over municipal corporations and their civil, political and governmental powers exists, except as limited by the federal and state constitutions. [A]nd such legislative power is often referred to as plenary, supreme, absolute, complete, or unlimited." 2 EUGENE McQUILLIN, MUNICIPAL CORPORATIONS § 4.03 (3d ed.1996). In this respect, Chief Justice Vanderbilt said:
It is fundamental in our law that there is no inherent right of local self-government beyond the control of the State, and that municipalities are but creations of the State, limited in their powers and capable of exercising only those powers of government granted to them by the Legislature....
[Wagner v. Newark, 24 N.J. 467, 474, 132 A.2d 794 (1957) (citations omitted)].
Several years earlier, the Chief Justice stated in Bucino v. Malone, 12 N.J. 330, 345, 96 A.2d 669 (1953): "In New Jersey local government has always been a creation of the Legislature. The people have no inherent right of local self-government beyond the control of the State. (citations omitted.)."
Against this background, we have no difficulty concluding that the strong remedial powers granted the LFB to correct gross financial failings at the municipal level must prevail over the general power of the Mayor and City Council to appoint and confirm a business administrator, as in more normal circumstances. See N.J.S.A. 40:69A-43(b). The Supervision Act grants to the LFB and the Director of the Division of Local Government Services clear authority and power to supervise municipalities in need of financial assistance. N.J.S.A. 52:27BB-6 states that, "[t]he division [Division of Local Finance in the State Department of Community Affairs] shall exercise State regulatory and supervisory powers over local government, assist local government in the solution of its problems, and plan and guide needed readjustments for effective local self-government." The purpose of the Supervision Act, N.J.S.A. 52:27BB-54, calls for the State to impose "special restraints" to "forestall serious defaults" which "burden local taxpayers and destroy the efficiency of local services." Where local government fails and crumbles, the State has been empowered to reassemble the pieces.
N.J.S.A. 52:27BB-66.1 specifically speaks to personnel reform, whether classified or unclassified, union or non-union. Without the power to effect reform in personnel, the LFB's efficacy in this situation is chimerical. Government is run by people, not machines or computers. As noted, the key paragraph in N.J.S.A. 52:27BB-66.1 dealing with personnel supervision states:
The board may authorize the municipality to appoint or dismiss unclassified persons in managerial positions necessary to the rehabilitation of the financial affairs of the municipality without regard to any procedural or other statutory requirements.
The Supervision Act also states that "[f]or the purposes of this article, the director shall have, in addition to his other powers, authority to issue and enforce orders as *783 authorized by law for other orders issued by him." N.J.S.A. 52:27BB-67. Further, N.J.S.A. 52:27BB-90 allows the Director to exercise the powers vested in the LFB with the board's approval. The Legislature also declared that "[t]his article shall be construed liberally to give effect to its intent that unsound financial conditions in municipalities shall be forestalled and corrected." N.J.S.A. 52:27BB-68. Because the Supervision Act is remedial in nature, aimed at the fiscal rehabilitation of municipalities subject to its provisions, the Act's purposes should be liberally construed to achieve this "express legislative intent and purpose[ ]." League of Municipalities, 158 N.J. 211, 225, 729 A.2d 21 (1999).
The Supervision Act demonstrates the Legislature's desire to vest expansive emergency power in the LFB and the Director to eliminate financial distress in municipalities. Article 4 of the Supervision Act dealing with "Unsound Financial Conditions" in municipalities describes many strategies which the LFB may use, in addition to the personnel powers under N.J.S.A. 52:27BB-66.1:
1. severe limitations on debt and other financial obligations. N.J.S.A. 52:27BB-57.
2. limitations on appropriations and expenditures. N.J.S.A. 52:27BB-58.
3. requirement of liquidation or refinancing of debt. N.J.S.A. 52:27BB-61.
4. placing a municipality under the supervision of the Municipal Finance Commission. N.J.S.A. 52:27BB-65.
5. control of tax collection and administration of miscellaneous revenues. N.J.S.A. 52:27BB-73, -74, -75, -76.
6. appointment of a fiscal control officer. N.J.S.A. 52:27BB-80, -81.
7. liquidation of old liabilities. N.J.S.A. 52:27BB-82, -83.
8. negotiation of cooperative agreements with other counties. N.J.S.A. 52:27BB-84.
9. instructing the Director to act as a controller. N.J.S.A. 52:27BB-85, -86.
10. approving or disapproving the municipalities' proposed annual budgets. N.J.S.A. 52:27BB-87.
Against this background of the pantheon of powers of the LFB and the Director, we construe the second paragraph of § 66.1 of Article 4 of the Supervision Act generously, to accomplish the obvious intent of the Legislature to stem fiscal bleeding and administrative ineptness in distressed municipalities. See N.J.S.A. 52:27BB-68 (this Article shall be construed liberally to effect its intent that unsound financial conditions shall be forestalled and corrected). Section 66.1 states "the board may authorize the municipality to appoint or dismiss unclassified person in managerial positions necessary to the rehabilitation of the financial affairs of the municipality without regard to any" other requirements. We view this as more than a mere "power of suggestion," as the City argues. Indeed, our dictionary defines "authorize" as more than merely precatory but "to endorse, empower, justify, or permit by or as if by some recognized or proper authority." Webster's Third New International Dictionary 146 (Merriam 1966).
While N.J.S.A. 52:27B-66.1 uses the words "may authorize," this was not intended to diminish the legislative purpose but to make clear that when implemented under the Supervision Act, remedial measures deemed essential by the LFB cannot be frustrated or overborne by the governing body of an ailing municipality. The authorization contemplated by the Supervision Act was designed to establish the basis for exercise of the Board's power to cause appointments or dismissals without regard to the usual procedural, statutory, civil service or collective bargaining requirements. In the context of Article 4's array of vital powers conferred on the *784 LFB and the Director in these situations, and the manifest legislative purpose, we read § 66.1 as giving the LFB the power to tell the City to appoint a particular business administrator when the City is under the Supervision Act.
As we stated several years ago in County of Camden v. S. Jersey Port, 312 N.J.Super. 387, 396-97, 711 A.2d 978 (App. Div.) cert. denied, 157 N.J. 542, 724 A.2d 801 (1998), in construing the South Jersey Port Corporation Act, N.J.S.A. 12:11A-1 to -29, where judicial interpretation was required to resolve a novel problem:
The clearest indication of an Act's meaning is its plain language. National Waste Recycling, Inc. v. Middlesex Cty. Improvement Auth., 150 N.J. 209, 223, 695 A.2d 1381 (1997). However, in times when the statute's plain language creates ambiguities, courts must interpret the statute in a manner consistent with the legislative intent. State v. Szemple, 135 N.J. 406, 422, 640 A.2d 817 (1994). It is the general intent of the statute that controls the interpretation of its parts. Ibid.; Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 128, 527 A.2d 1368 (1987). "`[S]tatutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as "consonant to reason and good discretion."`" Roig v. Kelsey, 135 N.J. 500, 515, 641 A.2d 248 (1994) (quoting Schierstead v. Brigantine, 29 N.J. 220, 230, 148 A.2d 591 (1959) (quoting Morris Canal & Banking Co. v. Central R.R., 16 N.J.Eq. 419, 428 (Ch. 1863))). Put simply, courts should avoid interpreting a statute in a manner that leads to an absurd, anomalous, or unreasonable result. Strasenburgh v. Straubmuller, 146 N.J. 527, 542, 683 A.2d 818 (1996); Reisman v. Great Am. Recreation, Inc., 266 N.J.Super. 87, 96, 628 A.2d 801 (App.Div.), certif. denied, 134 N.J. 560, 636 A.2d 519 (1993). Statutory interpretations should turn on the breadth of legislative objectives and the common sense of the situation. Jersey City Chapter, Property Owner's Protective Ass'n v. City Council, 55 N.J. 86, 100, 259 A.2d 698 (1969).

* * * * *
Moreover, N.J.S.A. 12:11A-26 compels this court to construe the South Jersey Port Corporation Act liberally in order to advance its purposes.

[Id.]
If we adopt the City's reasoning, under the third paragraph of § 66.1 the LFB and the Director could control, appoint and dismiss the "rank and file" employees, but not the key employees, an absurd result. We are guided by the "legislative objective and the common sense of the situation" in so construing § 66.1. See also Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 231, 708 A.2d 401 (1998).
The City's assertion that the Board's action has gone beyond the supervisory role envisioned by the Legislature is without merit. The Board and the Director have acted within the broad grant of power of the Supervision Act.

IV
We next consider the City's contention that the LFB's actions are unconstitutional and somehow disenfranchise the voters of the City. The Supervision Act is not "special legislation." Article 4, § 7, ¶ 9 of the New Jersey Constitution states, "[t]he Legislature shall not pass any private, special or local laws: ... (13) Regulating the internal affairs of municipalities formed for local government and counties, except as otherwise in this Constitution provided." Had the Act applied only to Camden, or to any other municipality specifically, it would be unconstitutional. The Legislature passed a general law which applies to any municipality which meets its definitions.
We fully realize that Article 4, § 7, ¶ 11 states, "[t]he provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally *785 construed in their favor." However, as recited, there is no ambiguity as to the intentions of the Supervision Act. Moreover, the so-called "Home Rule" tradition in this State, strongly relied upon by the City, is not founded on our Constitution or any statutes pertinent to this circumstance.

V
Finally, we conclude that the action by the LFB and the Director was not invalidated by their decision to decline to exercise progressive remedies under the Local Government Supervision Act of 1947. As observed, the Supervision Act grants both the LFB and the Director very substantial authority over municipalities in times of fiscal crises. For example, N.J.S.A. 52:27BB-46 allows for the inspection of local administration. N.J.S.A. 52:27BB-47 allows the LFB to inquire into the financial affairs of municipalities. N.J.S.A. 52:27BB-80 states that "[t]he board may recommend to the local governing body that a fiscal control officer be appointed." N.J.S.A. 52:27BB-82 states, "[t]he director shall exercise in the name of the municipality, all powers pertaining to the enforcement of obligations that are vested by law in the municipality." N.J.S.A. 52:27BB-85 states that "[i]f the board finds that sound fiscal conditions will be promoted by the exercise of a control function in the municipality and that the function is not, or cannot be, maintained in a practical manner by regular local officers, the board may instruct the director to perform the control function." N.J.S.A. 52:27BB-87 allows the director to submit alternate budgets for the municipality.
N.J.S.A. 52:27BB-56 explicitly requires the Board to identify which of the supervisory powers set forth in the Act it believes should be placed in effect in a municipality subject to its supervision under the Act but sets no priority for these remedies. The City's assertion that the Director and the LFB must employ certain lesser remedial options before more severe ones are used conflicts with the plain language of the Act and is without merit. Further, N.J.S.A. 52:27BB-23 states that "[i]t shall be the duty of the governing body and officers of a political subdivision of the State to co-operate with the director and the board toward giving effect to the purposes of this act, and the powers and duties of the division." Absent some sort of patent abuse of discretion, and certainly none is here manifest, we will not disturb the remedy of appointment of the business administrator imposed by the LFB and the Director pursuant to the statute.
Affirmed.