811 A.2d 501 (2002)
356 N.J. Super. 71
Robert BROWN, David Toma, individually and on behalf of all other similarly situated PFRS Accidental Disability retirees that were retired before April 1, 1991, Plaintiffs-Appellants,
v.
STATE of New Jersey, Department of the Treasury, Division of Pensions & Benefits, Police & Firemens Retirement System, Division of Taxation, Defendants Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 19, 2002.
Decided December 17, 2002.
*502 *503 *504 Robert C. Brown argued the cause for appellants (Mr. Brown, of counsel and on the brief).
Carol Johnston, Deputy Attorney General, argued the cause for respondents State of New Jersey, Department of the Treasury, Division of Pensions & Benefits, Police & Firemen's Retirement System (David Samson, Attorney General, attorney; Patrick DeAlmeida, Deputy Attorney General, of counsel; Ms. Johnson, on the brief).
Before Judges SKILLMAN, CUFF and WINKELSTEIN.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
Plaintiffs are retired police officers who have taken accidental disability retirement and receive a pension funded by the Police & Firemen's Retirement System (PFRS).[1] Plaintiffs filed a seven count complaint challenging an amendment to N.J.S.A. 43:16A-7, a provision of the laws concerning the Police & Firemen's Retirement System, N.J.S.A. 43:16A-1 to -16.16, which enhanced retirement benefits for certain PFRS members who retired on or after April 1, 1991. L. 1998, c. 281. Plaintiffs claim that those members of PFRS who retired on accidental disability from July 1, 1944, through March 31, 1991, were wrongly omitted by the Legislature from coverage under the statute.
In counts two through four, plaintiffs claimed the amendment is unconstitutional under the New Jersey and United States Constitutions[2]; is special legislation; and violates the Americans With Disabilities Act (ADA), 42 U.S.C.A. § 12131 to 12132. The fifth, sixth and seventh counts of the complaint alleged violations of New Jersey tax laws related to income tax, sales and use tax and residential property taxes. The court severed these counts and referred them to the Tax Court which dismissed them on summary judgment. That decision is not on appeal. Rather, plaintiffs challenge the court's decision granting summary judgment as to counts one through four of plaintiffs' complaint. In dismissing the complaint, the motion judge concluded that "the criteria under the rational basis test has been met." Plaintiffs appeal the dismissal and we affirm.

I
PFRS provides an accidental disability retirement benefit for former police and fire employees. N.J.S.A. 43:16A-7. Subject to certain conditions, the benefit is available to those police officers and firefighters who are "permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties." N.J.S.A. 43:16A-7(1).
Prior to January 6, 1998, the benefit for all qualifying retirees was calculated based on the member's compensation "for which contributions were being made at the time of the occurrence of the accident." N.J.S.A. 43:16A-7(2)(b) (1991). Under the amended statute, benefits are calculated *505 either based on the compensation "for which contributions were being made at the time of the occurrence of the accident or at the time of the member's retirement, whichever provides the largest possible benefit to the member." N.J.S.A. 43:16A-7(2)(b) (1998).
Plaintiffs claim the Legislature passed the amendment in response to events which took place in Essex County in 1991, when four to five hundred county employees, including ninety-one police officers, were laid-off for budgetary reasons. A group of officers took voluntary accidental disability retirement rather than face the lay-offs; their dates of retirement began April 1, 1991, and ended September 1, 1993.
In May 1996, State legislators from the Essex County Legislative District introduced the amendment to change the calculation of accidental disability retirement benefits. The legislation made the amendment retroactive to apply to all those persons retiring on or after April 1, 1991. Identical bills were submitted in both the Senate and the Assembly. See S. 1140, 1997 Leg. (N.J.1998), Gen. Assemb. 2709, 1997 Leg. (N.J.1998).
According to the Senate Budget and Appropriations Committee, the number of individuals who would be affected by this legislation was "small." Senate Budget and Appropriations Committee, Statement to Senate Bill No. 1140, (January 27, 1997). Based upon actuarial valuations of the retirement system of the 2,126 members of the PFRS who had retired on disability benefits, the average number who retired annually between 1991 and 1994 was 81. Legislative Fiscal Estimate to Senate Bill No. 1140, (November 21, 1996). Of those 81, approximately 30.3 per cent25 members annuallyretired on accidental disability benefits. Ibid.[3] The State certified, and it has not been disputed, that of all the disability retirees who retired prior to April 1, 1991, 793 retired on accidental disability benefits.
The governor signed Senate Bill 1140 into law, P.L.1997, c. 281, effective January 6, 1998. The new method of calculation is available to any member who retired on accidental disability retirement on or after April 1, 1991. L. 1997, c. 281.

II
Plaintiffs claim that the amendment to N.J.S.A. 43:16A-7 violates the Fourteenth Amendment to the United States Constitution by making an arbitrary distinction between those accidental disability beneficiaries who retired prior to April 1, 1991, and those who retired on or after that date. Although plaintiffs do not disclose the compensation received by the police officers who retired on accidental disability pension, we will assume that some of the post-April 1, 1991, retirees received increased pension benefits as a result of the amended legislation.
The equal protection guarantees of the Fourteenth Amendment of the federal Constitution and the New Jersey Constitution, N.J. Const. art. I, § 1, provide that similarly situated persons shall be treated alike. State v. Fernandez, 209 N.J.Super. 37, 47, 506 A.2d 1245 (App.Div. 1986) (quotations omitted). Equal protection claims under the Fourteenth Amendment to the United States Constitution are analyzed under a three tier approach. Barone v. Department of Human Servs., *506 107 N.J. 355, 364, 526 A.2d 1055 (1987). "A statute that regulates a `fundamental right' or a `suspect class' is subject to `strict scrutiny.'" Id. at 364-65, 526 A.2d 1055. A statute regulating a "semi-suspect" class or substantially but indirectly affecting a fundamental right will be subject to "intermediate scrutiny." Id. at 365, 526 A.2d 1055. All other statutes are subject to rational basis scrutiny, meaning it must be "rationally related to the achievement of a legitimate state interest." Ibid. (citation omitted). Under the New Jersey Constitution, the equal protection analysis may differ somewhat from the federal standard, but the New Jersey Supreme Court has recognized that the two approaches are "substantially the same" and "will often yield the same result." Drew Assoc. of N.J., L.P. v. Travisano, 122 N.J. 249, 259, 584 A.2d 807 (1991) (citations omitted); Barone, supra, 107 N.J. at 368, 526 A.2d 1055. The state analysis "employ[s] a balancing test" and when "striking the balance," a court must consider "the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." Greenberg v. Kimmelman, 99 N.J. 552, 567, 494 A.2d 294 (1985) (citations omitted).
Neither party submits that the PFRS statute is subject to either strict or intermediate scrutiny. Therefore, we apply a rational basis scrutiny to plaintiffs' equal protection claim.
Statutes carry a strong presumption in favor of constitutionality, and the proponent of invalidity bears the heavy burden of overcoming that presumption. State Farm Mut. Auto. Ins. Co. v. State, 124 N.J. 32, 45-46, 590 A.2d 191 (1991); David v. Vesta Co., 45 N.J. 301, 315, 212 A.2d 345 (1965). The Legislature has wide discretion in determining the perimeters of a classification. Harvey v. Essex Cty. Bd. of Freeholders, 30 N.J. 381, 390, 153 A.2d 10 (1959) (citation omitted). "In considering the constitutionality of legislation, courts do not weigh its efficacy or wisdom." State Farm Mut. Auto. Ins. Co., supra, 124 N.J. at 45, 590 A.2d 191. "The problems of government are practical ones and may justify, if they do not require, rough accommodationsillogical, it may be, and unscientific." Brown v. Township of Old Bridge, 319 N.J.Super. 476, 506, 725 A.2d 1154 (App.Div.) (quoting Bowen v. Gilliard, 483 U.S. 587, 601, 107 S.Ct. 3008, 3017, 97 L.Ed.2d 485, 501 (1987)), certif. denied, 162 N.J. 131, 741 A.2d 99 (1999). A court will not second guess the Legislature's policy decisions regarding the "[i]ntractable economic, social and philosophical problems presented by employee pension programs." Reiser v. Pension Comm'n of the Employees Ret. Sys., 147 N.J.Super. 168, 183, 370 A.2d 902 (Law Div.1976).
Nor will "a classification ... be set aside if any state of facts reasonably may be conceived to justify it." Paul Kimball Hosp. v. Brick Tp. Hosp., 86 N.J. 429, 441, 432 A.2d 36 (1981) (citing McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L. Ed.2d 393 (1961)). An adequate factual basis for the legislative judgment is presumed to exist. Burton v. Sills, 53 N.J. 86, 95, 248 A.2d 521 (1968), app. dism., 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969). "A statute satisfies the rational basis test even if the classification it makes is imperfect." Barone, supra, 107 N.J. at 367, 526 A.2d 1055.
The amendment to N.J.S.A. 43:16A-7 separated a uniform group of persons receiving accidental disability retirement pensions into two classes, those who retired prior to April 1, 1991, and those who retired on or subsequent to that date. The statute must be upheld if the distinction bears a rational relation to a legitimate government interest.
*507 "[R]emedial legislation need not be `all-or-nothing'[;] ... the Legislature can decide that to start somewhere is better than to start nowhere." Drew Assoc., supra, 122 N.J. at 262, 584 A.2d 807 (citation omitted). In addition, grandfather clauses, which divide similarly situated persons into separate groups using a set date or period of time, do not violate the right to equal protection provided there is some rational basis for the distinction. Indep. Electricians and Elec. Contractors' Ass'n v. New Jersey Bd. of Exam'rs. of Elec. Contractors, 54 N.J. 466, 477-78, 256 A.2d 33 (1969).
When the Legislature created the PFRS, it intended to implement "a statewide pension system for full-time policemen and firemen designed to ensure the uniform protection of all such public officers through the medium of pensions payable from a fund maintained upon a sound actuarial basis." Seire v. Police and Fire Pension Comm'n, 6 N.J. 586, 591, 80 A.2d 97 (1951). The legislation replaced the old system, where independent municipal pension funds for police and fire employees struggled to maintain financial viability, with a statewide system that would be less susceptible to financial failure. Brown, supra, 319 N.J.Super. at 498-99, 725 A.2d 1154.
The legislative history of the amendment to N.J.S.A. 43:16A-7 indicates that the legislative goal was to allow PFRS members to calculate their pensions based on their compensation at the time of their retirement if it would afford the member a higher benefit. Senate Budget and Appropriations Committee, Statement to Senate Bill No. 1140, (January 27, 1997). The report to the committee indicated that the fiscal impact of the legislation would be "small." Ibid. Said another way, the Legislature intended to provide a higher benefit to PFRS members retiring on accidental disability pension but was concerned with placing a sizeable burden on the PFRS system by increasing the benefits for too large a group of beneficiaries. This legislation was enacted to provide an increased benefit to PFRS members while protecting the fiscal integrity of the system.
These are valid legislative purposes. In the interest of preserving the state's economic resources, the Legislature may set limits on the social benefits it confers. Franklin v. Dept. of Human Serv., 225 N.J.Super. 504, 521-22, 543 A.2d 56 (App. Div.) (upholding a time limit for the receipt of emergency shelter assistance), aff'd, 111 N.J. 1, 543 A.2d 1 (1988). Both preservation of fiscal integrity and protecting municipal revenues are valid state interests. See Brown, supra, 319 N.J.Super. at 506-07, 725 A.2d 1154. By limiting the number of eligible PFRS members to those who retired on accidental disability pension on or after the April 1, 1991, cut-off date, the Legislature was acting well within its constitutional authority.
Plaintiffs rely on several decisions of other states to support their equal protection claim. These cases are distinguishable. In Klein v. State Employees' Ret. Sys., 521 Pa. 330, 555 A.2d 1216, 1225 (1989), the court applied a strict scrutiny review when examining different pension benefits provided to judges according to their dates of hire because; the pension system at issue was designed for the judiciary, and the independence of the judiciary was a fundamental interest.
In Arneson v. State by and Through Dept. of Admin., Teachers' Ret. Div., 262 Mont. 269, 864 P.2d 1245, 1248 (1993), the statute allowed an inflation adjustment for pension benefits for survivors of an employee, but not for beneficiaries of retired employees. The court, relying solely on Montana law, did not find a rational relationship between the purpose of providing *508 an inflation adjustment with the classification created by the legislation. Ibid. The Montana statute, however, differs from the PFRS amendment in that preserving state resources was not a purpose of Montana's challenged statute.
Plaintiffs also rely on Employees' Ret. Sys. v. Martin, 272 Ga. 535, 533 S.E.2d 68 (2000). In that case, former county employees who transferred to state employment after July 1, 1982, brought an action against the Employees' Retirement System alleging that the retirement classification was unconstitutional. Id. at 69. They contended the system violated their rights to equal protection because it treated them differently from employees transferred before July 1, 1982. Ibid. Although the court concluded no rational basis existed for the difference in treatment of the employees, the court relied strictly upon precedential Georgia decisions. Id. at 70-72. The court did not discuss the ability of the legislative body to establish an effective date for the legislation based upon the legislation's future fiscal impact on the state's financial resources.
Here, on the other hand, the Legislature sought to increase the benefits provided for eligible accidental disability retirees without placing too significant a burden upon the PFRS fund. There were 793 accidental disability retirees who retired prior to April 1, 1991. They would have been eligible to benefit under the amended legislation but for the April 1, 1991, cut-off. The State Budget Appropriations Committee estimated that only twenty-five members per year would be eligible for increased benefits after April 1, 1991. Even though the Legislature did not discuss the specific dollar amounts of those increases, we may infer that had it included the 793 members who retired on accidental disability pension prior to April 1, 1991, the fiscal impact would have increased many fold. By excluding those persons who retired prior to April 1, 1991, the Legislature believed that the fiscal impact of the bill would be "small."
To support their equal protection argument, plaintiffs focus on the intent of the legislators who sponsored the legislation. Plaintiffs claim those legislators intended to assist the specific police officers affected by the Essex County lay-offs. A legislator's motive, however, is not relevant to an equal protection analysis. Alleged "[i]mproper ulterior motives on the part of individual legislators ... cannot serve to supplant a lawful intent which can otherwise be imputed to the Legislature as a collective body." New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, 82 N.J. 57, 78-79, 411 A.2d 168 (1980). Because it was rational for the Legislature to limit a prospective benefit in order to further the legitimate interest of preserving the fiscal integrity of the PFRS fund, the amendment to N.J.S.A. 43:16A-7 does not violate the guarantees of equal protection.

III
Plaintiffs contend the amendment to N.J.S.A. 43:16A-7 is special legislation. The New Jersey Constitution mandates that "[n]o general law shall embrace any provision of a private, special or local character." N.J. Const. art. IV, § 7, ¶ 7.
Section seven enumerates prohibited subjects of special laws. The relevant provision states:
[t]he Legislature shall not pass any private, special or local laws:

* * *
(8) Granting to any corporation, association or individual any exclusive privilege, *509 immunity or franchise whatever. [N.J. Const. art. IV, § 7, ¶ 9(8).]
"A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate." Budd v. Hancock, 66 N.J.L. 133, 135, 48 A. 1023 (Sup.Ct.1901). "[T]he test of whether a law constitutes special legislation is essentially the same as that which determines whether it affords equal protection of the laws." Phillips v. Curiale, 128 N.J. 608, 627, 608 A.2d 895 (1992) (quoting Township of Mahwah v. Bergen County Bd. of Taxation, 98 N.J. 268, 285, 486 A.2d 818, cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985)). "Whether a law is special or general depends on the class of persons affected by the law." Jordan v. Horsemen's Benevolent and Protective Ass'n, 90 N.J. 422, 432, 448 A.2d 462 (1982). "The essence of unconstitutional special legislation is the arbitrary exclusion of someone from the class." Ibid. The court should examine whether anyone "who should be included has been excluded from the Legislature's action." Phillips, supra, 128 N.J. at 629, 608 A.2d 895 (citation omitted). A law is general, as opposed to special, when it affects "equally all of a group who, bearing in mind the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves." Harvey v. Essex Cty. Bd. of Freeholders, 30 N.J. 381, 389, 153 A.2d 10 (1959). Legislation is deemed special "when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate." Secaucus v. Hudson County Bd. of Taxation, 133 N.J. 482, 494, 628 A.2d 288 (1993) (quotation omitted), cert. denied, 510 U.S. 1110, 114 S.Ct. 1050, 127 L.Ed.2d 372 (1994).
The New Jersey Supreme Court established a three-part test to determine whether a law violates the prohibition against special laws. A court must examine: "(1) the purpose and subject matter of the statute; (2) whether any persons are excluded who should be included; and (3) whether the classification is reasonable, given the purpose of the statute." Jordan, supra, 90 N.J. at 432-33, 448 A.2d 462 (citing Vreeland v. Byrne, 72 N.J. 292, 298-301, 370 A.2d 825 (1977)). As in an equal protection analysis, legislation carries a presumption of validity. "A statute must `clearly and irremediably violate[]' the ban on special legislation to be invalidated." City of Jersey City v. Farmer, 329 N.J.Super. 27, 38, 746 A.2d 1018 (App. Div.) (quotation omitted), certif. denied, 165 N.J. 135, 754 A.2d 1211 (2000).
Given this test, plaintiffs' argument fails because the challenged legislation satisfies a valid purposeto provide an increased benefit to PFRS members while at the same time to protect the fiscal integrity of the system. The Legislature's creation of a dividing line to conserve the fiscal resources of the PFRS fund was not an unreasonable classification given the statute's purpose. Compare L. 1997, c. 281, challenged in New Jersey State Firemen's Mut. Benevolent Ass'n v. N. Hudson Regional Fire & Rescue, 340 N.J.Super. 577, 589, 775 A.2d 43 (App.Div.) (where the statute conferred a benefit of paid leave to attend firemen's convention only to specific fraternal organizations based on ethnicity), certif. denied, 170 N.J. 88, 784 A.2d 721 (2001).
We further find that no group similarly situated to those covered by the statute has been excluded. All of those PFRS members who retired as a result of their accidental disabilities prior to April 1, 1991, are treated the same, regardless of *510 the nature of their disabilities. The amendment does not exclude a class of persons upon whom it would otherwise operate.

IV
Finally, plaintiffs complain that because the amended legislation denies a benefit to disabled persons, it violates the ADA[4], which states, in part, that:
no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. [42 U.S.C.A. § 12132.]
To establish an ADA violation, a plaintiff must demonstrate a causal connection between the disability and the alleged discrimination. Bowers v. National Collegiate Athletic Ass'n, 118 F.Supp.2d 494, 511 (D.N.J.2000) (citation omitted). We have said that:
In order to establish a violation of Title II of the ADA by these defendants, a plaintiff must show: (1) that he or she "has a disability"; (2) "is otherwise qualified for the employment or benefit"; (3) that he or she was "excluded from the employment or benefit ... solely on the basis of the disability"; and (4) the provider of the "service[], program[], or activit[y]" is "a public entity."
[Ferraro v. City of Long Branch, 314 N.J.Super. 268, 289, 714 A.2d 945 (App. Div.) (quoting Doe v. University of Md. Med. Sys. Corp., 50 F.3d 1261, 1264 n. 8, 1265 (4th Cir.1995)), certif. denied, 157 N.J. 541, 724 A.2d 801 (1998).]
Plaintiffs have not demonstrated that those who retired on accidental disability prior to April 1, 1991, were denied increased benefits "solely on the basis of disability." Ibid. The dividing line between those who will benefit from the amendment and those who will not is based upon the date of the member's retirement, not the person's disability. Plaintiffs have failed to demonstrate a causal connection between their status as disabled persons and the statutory distinction.
Affirmed.
NOTES
[1] Although in the caption plaintiffs purport to represent "all other similarly situated PFRS Accidental Disability retirees that were retired before April 1, 1991," plaintiffs have not obtained class certification.
[2] U.S. Const. amend. XIV; N.J. Const, art. I, § 1.
[3] The Senate Budget and Appropriations Committee did not determine how many of those persons who retired on accidental disability pension after April 1, 1991, would enjoy increased benefits under the amendment. Senate Budget and Appropriations Committee, Statement to Senate Bill No. 1140 (January 27, 1997).
[4] We do not address whether the State of New Jersey is immune from suit under the ADA. See Bd. of Trs. of the Univ. of Alabama v. Garrett, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).