**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1497-17T2

M&T BANK, successor by
merger to HUDSON CITY
SAVINGS BANK,

      Plaintiff-Respondent,

v.

DANIEL B. GRAVES,

      Defendant-Appellant,

and

MRS. DANIEL B. GRAVES,
his wife, JENNIE B. GRAVES,
MR. GRAVES, husband of JENNIE
B. GRAVES, and PNC BANK,
NATIONAL ASSOCIATION,

      Defendants.
_____

Submitted September 18, 2018 – Decided October 30, 2018

Before Judges Yannotti and Rothstadt.

On appeal from Superior Court of New Jersey, Chancery Division, Essex County, Docket No. F-002952-16.

Murano & Roth, LLC, attorneys for appellant (John F. Murano, on the briefs).

Parker, McCay, PA, attorneys for respondent (Eugene M. Mariano, of counsel; Stacy L. Moore, Jr., on the brief).

PER CURIAM

In this residential foreclosure action filed by plaintiff, M&T Bank, successor by merger to Hudson City Savings Bank, defendant Daniel Graves[1] appeals from the Chancery Division's denial of his motion for a stay of a foreclosure under a statute enacted by the Legislature as part of its efforts to "codify and expand standards and safeguards for the treatment of individuals . . . seeking financial assistance in recovering from Superstorm Sandy.[2]" N.J.S.A. 52:15D-3.

The relevant provisions of the statute upon which defendant relied in the trial court, and now on appeal, states the following:

---

[1] Although named as a defendant, Daniel Graves' wife Jennie Graves is not participating in this appeal.

[2] "'Superstorm Sandy' means the major storm that made landfall in New Jersey on October 29, 2012." N.J.S.A. 52:13D-4.

A-1497-17T2

a. A Sandy-impacted homeowner shall be eligible for a forbearance regardless of whether the homeowner's primary residence is already the subject of a foreclosure proceeding. The Sandy-impacted homeowner shall apply to the commissioner, on forms to be provided by the department, for a certification of eligibility for the forbearance under this subsection before the first day of the third month next following the date when the commissioner makes the application available pursuant to subparagraph (b) of paragraph (1) of subsection (e) of this section. The commissioner shall approve or deny an application within 30 days of its delivery to the commissioner. If the application is not approved or denied within 30 days of its delivery, the application shall be deemed approved.

b. The forbearance period shall conclude upon the earlier of:

(1) the conclusion of one year following issuance of a certificate of occupancy for recovery and rebuilding program work;

(2) July 1, 2019; or

(3) regarding a property in foreclosure proceedings, upon the expiration of 10 days following sheriff's sale.

. . . .

d. A Sandy-impacted homeowner who was the subject of a foreclosure proceeding as of August 10, 2015, the effective date of P.L.2015, c.102 (C.52:15D-3 et seq.) shall, upon good cause shown, be awarded, by the court and upon application by the property owner, a stay in the foreclosure proceedings. An application to the court by a property owner under this subsection shall

be made before the first day of the fifth month next following the effective date of P.L.2017, c.15, unless the courts in their discretion permit application submission for a longer period. The receipt of rental assistance from the Federal Emergency Management Agency as a result of damage to the homeowner's primary residence due to Superstorm Sandy, or approval for assistance through the RREM [Reconstruction, Rehabilitation, Elevation and Mitigation] or LMI [Low-to-Moderate Income] program, shall constitute good cause for the award of a stay under this subsection for a period concluding upon the earlier of:

> (1) the conclusion of one year following issuance of a certificate of occupancy for recovery and rebuilding program work; or

> (2) July 1, 2019.

> [N.J.S.A. 52:15D-13 (Emphasis added).]

Relatedly, N.J.S.A. 52:15D-4 states the following:

> "Sandy-impacted homeowner" means a homeowner for whom one or both of the following are true:

>> (1) the homeowner received rental assistance from the Federal Emergency Management Agency as a result of damage to his or her primary residence due to Superstorm Sandy; or

>> (2) the homeowner has been approved for assistance through the [Reconstruction, Rehabilitation, Elevation and Mitigation (RREM)] or [Low-to-Moderate Income and the program for which policies and

4

> procedures have been adopted by the Department of Community Affairs (LMI)] program.
>
> [N.J.S.A. 52:13D-4.]

It also defines "forbearance" as "a period of time during which obligations for mortgage and interest payments are suspended." Ibid.

After considering the statute, Judge Donald A. Kessler determined that, although defendant was entitled to the "forbearance" provided for under subsection (a), he was not eligible for a stay under subsection (d) because plaintiff filed its foreclosure action after the date for eligibility stated in the statute. Judge Kessler then considered defendant's application for a stay under the traditional analysis stated in Crowe[3] and denied his application.

On appeal, defendant argues that he was entitled to a stay of a scheduled sheriff's sale because he qualified for a "forbearance" under subsection (a). He contends that Judge Kessler should not have applied Crowe to his application, improperly considered defendant's motion under subsection (d) of the statute, and failed to give effect to the forbearance to which defendant was entitled by failing to stay the foreclosure proceedings. Defendant relies upon the statute's

---

[3] Crowe v. De Gioia, 90 N.J. 126, 132-35 (1982).

A-1497-17T2

legislative history, which he argues supports his entitlement to a stay of the foreclosure action. We disagree.

The facts leading to defendant's application for a stay are generally not in dispute and are summarized as follows. After plaintiff instituted this action in January 2016, and defendant filed a contesting answer. The trial court entered summary judgment in favor of plaintiff and on May 10, 2017, it entered a final judgment of foreclosure against defendant in the amount of $2,371,409.05. The court then scheduled a sheriff's sale and defendant filed a motion for a stay under the statute. Defendant specifically requested the court to "stay the foreclosure sale until the conclusion of one year following issuance of a certificate of occupancy for recovery and rebuilding work, or July 1, 2019, whichever shall first occur."

In support of his motion, defendant filed a certification in which he explained the problems he and his wife had that led to the foreclosure, the details of their pursuit for assistance through government sponsored relief programs for victims of Superstorm Sandy, and the basis for his entitlement for a stay under the statute. According to defendant, in 2011 he and his wife borrowed $2,030,000 from plaintiff's predecessor to refinance their family home in Short Hills. Their mortgage note required that they make monthly payments of

$7,823.96 beginning on April 1, 2011. The couple made those payments through April 2015, when they defaulted.

From 2004 through 2016, defendant and his wife were self-employed. In 2012, defendant's home suffered damage as a result of Superstorm Sandy, which required structural repairs. In February 2015, defendant was hospitalized and unable to work full-time. Defendant's illness caused him to experience a reduction in income and to have "no resources to make any remaining repairs on [the] house nor could [he and his wife] afford to move out of the house."

Defendant sought relief from the Federal Emergency Management Agency (FEMA) as well as from his homeowner's insurance company. Due to a shortage of contractors as well as an "overload" on inspectors for both the insurance company and FEMA, it took "the balance of 2012 [and] all of 2013 through the first quarter of 2014 . . . to complete as many repairs as [defendant] could afford." Ibid. During this period of "triage" repairs, defendant remained in the home and incurred out-of-pocket expenses totaling $51,693.00, receiving only "a minimal award from FEMA." To pay for these repairs, defendant "depleted [his and his wife's] savings and liquidated [their] pensions."

In November 2015, defendant learned about the ReNew Jersey Stronger LMI program that offered financial assistance to Sandy victims. In March 2016,

he submitted an application to the program, which was initially denied. Defendant appealed to the Department of Community Affairs (DCA) and ultimately reached a settlement on July 27, 2016, that resulted in a grant of $89,937.78 with the possibility of the amount being increased to $150,000.

After being informed of additional relief available to him through the DCA and making the required application, on May 2, 2017, the DCA issued a "Certificate of Eligibility Sandy-Impacted Forbearance Certification." The DCA provided the certificate to plaintiff and advised that defendant was entitled to "a term of forbearance," which would conclude on "the earlier of . . . one year following issuance of a Certificate of Occupancy for the mortgagor's Superstorm-Sandy impacted primary residence; July 1, 2019; or, regarding a property in foreclosure proceedings, upon the expiration of 10 days following a sheriff's sale." The notification did not mention a stay of the pending foreclosure proceedings. Nevertheless, defendant relied upon that certificate in his application to Judge Kessler for a stay of the foreclosure proceedings under subsection (a) of the statute.

On November 9, 2017, after considering defendant's certification and the parties' arguments, Judge Kessler entered an order denying defendant's motion to stay the foreclosure proceedings accompanied by a statement of reasons. The

A-1497-17T2

judge considered and rejected defendant's argument that, because he was qualified for a term of forbearance under subsection (a), he was entitled to a stay. Judge Kessler explained that he denied defendant's motion because defendant failed to meet the criteria for injunctive relief set forth in Crowe. [4] Specifically, he found that defendant failed to show a probability of success on the merits because he was ineligible for a stay under subsection (d), as plaintiff's foreclosure action was filed after the date set forth in the statute, August 10, 2015.

Even if the foreclosure action commenced before that date, the judge concluded that defendant failed to show "good cause" as required under subsection (d). He stated that defendant failed to show "clear and convincing evidence that default on the mortgage was a direct result of Hurricane Sandy" and that he did not provide evidence excusing his late filing for a stay of the foreclosure proceedings. Judge Kessler noted that, despite having received government funds, defendant did not alert plaintiff of financial distress until March 2015. The judge also observed that there was no evidence that the

---

[4] Under Crowe, parties seeking an injunction must demonstrate: (1) that without a preliminary injunction or stay, irreparable harm will occur; (2) that the applicant's underlying claims are settled; (3) that the applicant can show a reasonable probability of success on the merits; and (4) that a balancing of hardships weighs in favor of granting relief. Crowe, 90 N.J. at 132-34.

A-1497-17T2

application for staying the foreclosure was "attributable to circumstances beyond [defendant's] control."  Moreover, the judge found that defendant failed to demonstrate irreparable harm and after balancing the equites, concluded that defendant was not entitled to relief.

Judge Kessler specifically considered the language and construction of the statute and concluded it clearly indicated that given the separate procedures for forbearance and foreclosure under the statute, a homeowner could apply for either or both.  He noted that forbearance did not include a right to a stay because "[i]f foreclosure was automatically stayed upon receipt of a Sandy-impacted forbearance, there would be no reason . . . to include a provision that premises the conclusion of forbearance on completion of a sheriff's sale."  The judge found further "evidence that the statute does not treat stay and forbearance synonymously" under subsection (f) of the statute.[5]  Quoting from that

---

[5]  Subsection (f) states the following:

> f. Sandy-impacted homeowners awarded a stay of foreclosure proceedings or forbearance, or both, under this section shall be responsible for the maintenance of the property during the stay or period of forbearance, or both.  After service of notice of any proceedings conducted to terminate forbearance, made on the mortgagor at an address determined pursuant to due diligence of the movant mortgagee or creditor to be the

A-1497-17T2

subsection, the judge pointed out that it provided that a homeowner "awarded a stay of foreclosure proceedings or forbearance or both . . . shall be responsible for maintenance of the property."

Based on the clear distinction of the relief provided under the statute, Judge Kessler rejected defendant's argument and denied his motion for a stray. This appeal followed.

We review a trial court's denial of a stay under an abuse of discretion standard. Granata v. Broderick, 446 N.J. Super. 449, 469 (App. Div. 2016). "The granting of a stay is discretionary with the trial court, 'limited only by special equities showing abuse of discretion in that injustice would be perpetrated on the one seeking the stay, and no hardship, prejudice or inconvenience would result to the one against whom it is sought.'" Ibid. (quoting Gosschalk v. Gosschalk, 48 N.J. Super. 566, 579 (App. Div. 1958)).

An abuse of discretion occurs "when a decision 'is made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an

actual current residence of the mortgagor, providing opportunity for the mortgagor to respond and contest the proceedings, a stay of foreclosure proceedings or forbearance, or both, awarded under this section shall cease immediately upon a court's determination that the subject residential property has been abandoned by the Sandy-impacted homeowner.

11

impermissible basis.'" US Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). It is this court's obligation to determine "whether the trial judge pursue[d] a manifestly unjust course[,]" which requires reversal. Gillman v. Bally Mfg. Corp., 286 N.J. Super. 523, 528 (App. Div. 1996) (quoting Gittleman v. Cent. Jersey Bank & Trust Co., 103 N.J. Super. 175, 179 (App. Div. 1967), rev'd on other grounds, 52 N.J. 503 (1968)); see also Burns v. Hoboken Rent Leveling & Stabilization Bd., 429 N.J. Super. 435, 443 (App. Div. 2013). However, we review de novo the trial court's resolution of legal issues relative to its decision. See Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995); State v. Gandhi, 201 N.J. 161, 176 (2010).

At issue here is the trial court's resolution of a legal issue, the interpretation of N.J.S.A. 53:15D-13. "Questions pertaining to statutory interpretation are legal in nature, so '[w]e review such decisions de novo, "unconstrained by deference to the decisions of the trial court . . . ."'" State v. Fuqua, __ N.J. __, __ (2018) (Slip op. at 7-8) (quoting State v. S.B., 230 N.J. 62, 67 (2017)).

In interpreting a statute, our primary objective is to ascertain the intent of the Legislature by first looking to the "statutory language.". DiProspero v. Penn,

183 N.J. 477, 492 (2005).  The language of the statute is "the best indicator" of legislative intent.  In re Plan for the Abolition of the Council on Affordable Hous., 214 N.J. 444, 467 (2013).   "[W]e 'give words "their ordinary meaning and significance,"' acknowledging that the 'statutory language is "the best indicator of [the Legislature's] intent."'"  Fuqua, __ N.J. at __ (Slip op. at 8) (quoting Tumpson v. Farina, 218 N.J. 450, 467 (2014)) (alteration in original).  We "read them in context with related provisions so as to give sense to the legislation as a whole."  DiProspero, 183 N.J. at 492 (citations omitted); Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 101 (2009); N.J. Election Law Enf't Comm'n v. DiVincenzo, 451 N.J. Super. 554, 576 (App. Div. 2017).  "If the plain language leads to a clear and unambiguous result, then [the] interpretive process is over."  Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007).

We "will not presume that the Legislature intended a result different from what is indicated by the plain language or add a qualification to a statute that the Legislature chose to omit."  Fuqua, __ N.J. at __ (slip op. at 8) (quoting Tumpson, 218 N.J. at 467-68).  It is impermissible for courts to rewrite plainly worded statutes.  Lippman v. Ethicon, Inc., 222 N.J. 362, 388 (2015).

A-1497-17T2

We only resort to extrinsic evidence, such as legislative history and committee reports, in the event that the statutory language at issue is ambiguous. Fuqua, __ N.J. at __ (Slip op. at 8). If a statute is unambiguous, it will be applied as written and will not require a court to analyze legislative history. Hargrove v. Sleepy's, LLC, 220 N.J. 289, 301 (2015) (citations omitted). It is only when the language does not yield an unambiguous interpretation that we continue the process to discern legislative intent, interpreting statutory language "in accordance with common sense" and we may "consider the entire legislative scheme of which a particular provision is but a part." Morristown Assocs. v. Grant Oil Co., 220 N.J. 360, 380 (2015). We may turn to extrinsic evidence, "including legislative history, committee reports, and contemporaneous construction." DiProspero, 183 N.J. at 492-93 (citation omitted); see also Burnett v. Cty. of Bergen, 198 N.J. 408, 421 (2009). There are many tools available for analysis, but only one goal. North Jersey Media Grp. v. Bergen Cty. Prosecutor's Office, 447 N.J. Super. 182, 200 (App. Div. 2016). "Regardless of the materials relied upon and the analytical tools employed, in the final analysis, courts should seek to effectuate the fundamental purpose for which the legislation was enacted." In re Young, 202 N.J. 50, 64 (2010) (citation omitted).

A-1497-17T2

Applying these guiding principles, we conclude defendant's argument that he was eligible for a stay of the foreclosure proceedings in this case by virtue of entitlement to a forbearance under subsection (a) is without sufficient merit to warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).  We affirm substantially for the reasons expressed by Judge Kessler in his cogent statement of reasons.  We add only the following brief comments.

We agree with Judge Kessler that there is no ambiguity in the statute's clear language regarding who is entitled to a stay of foreclosure proceedings.  However, even if we found some ambiguity that warranted our consideration of the statute's legislative history as argued by defendant, we would reach the same conclusion that defendant was not entitled to a stay of the foreclosure proceedings.  The statute's legislative history is replete with evidence that the Legislature exercised its authority to establish two different remedies to address Superstorm Sandy victims' financial distress depending upon what their circumstances were at the time.  For example, a statement made accompanying proposed amendments to the statute's original version, make clear that such amendments "allow[ed] Sandy-impacted homeowners who are already in foreclosure to apply for the same mortgage forbearance relief that the bill permits other Sandy-impacted homeowners to apply for, in addition to a stay of

the foreclosure proceedings." <u>Statement with Assemb. Floor Amendments to A. 333</u> (June 27, 2016).

There is no indication that a Sandy-impacted homeowner against whom a foreclosure was filed months after the statutory deadline would be entitled to a stay of those proceedings if found to be eligible for forbearance as provided under subsection (a). Moreover, the Legislature's use of a cut-off date for qualified applicants was a proper attempt to limit eligibility for a stay to those whose distress was actually caused by Superstorm Sandy's impact, rather than other personal or financial problems. <u>See</u> <u>Brown v. State</u>, 356 N.J. Super. 71, 82 (App. Div. 2002) (finding the Legislature was acting within its constitutional authority when it imposed a cut-off date to limit social benefits that it conferred).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1497-17T2