22 A.3d 170 (2011)
421 N.J. Super. 75
COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, American Federation of State, County and Municipal Employees, AFL-CIO, Council 1, American Federation of State, County and Municipal Employees, AFL-CIO, Council 73, Plaintiffs,
v.
STATE of New Jersey, DEPARTMENT OF TREASURY, DIVISION OF PENSIONS AND BENEFITS and the State Health Benefits Commission, Defendants.
Civil Action Docket No. MER-C-72-10.
Superior Court of New Jersey, Law Division, Mercer County.
Decided January 19, 2011.
*172 Steven P. Weissman and Annmarie Pinarski, Somerset, for plaintiffs CWA and AFSCME Council 73 (Weissman & Mintz, attorneys); Sidney H. Lehmann and Edward M. Suarez, Newark, for plaintiff AFSCME Council 1 (Zazzalli Fagella Nowak Kleinbaum & Friedman, attorneys).
Robert Lougy, Assistant Attorney General, for defendants (Paula T. Dow, Attorney General).
FEINBERG, A.J.S.C.
This matter comes before the court by way of a verified complaint for declaratory judgment filed on August 23, 2010, by Communications Workers of America, AFL-CIO ("CWA"), the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO Council 1 ("Council 1"), and the American Federation of State, County and Municipal Employees, AFL-CIO, Council 73 ("Council 73") (collectively "plaintiffs"). Plaintiffs are various unions and labor organizations which represent State and local public employees in collective negotiation agreements ("CNAs") regarding the terms and conditions of employment with public employers at all levels of government in New Jersey.[1]
*173 Defendants are the State of New Jersey, Department of Treasury, Division of Pensions and Benefits (the "State"), and the State Health Benefits Commission ("SHBC") (collectively "defendants"). The Department of the Treasury administers SHBC and School Employee's Health Benefits Commission ("SEHBC"), which in turn, administer the State Health Benefits Plan ("SHBP") and School Employee Health Benefits Plan ("SEHBP"), respectively.
Plaintiffs challenge the validity of legislation known as P.L. 2010, Chapter 2, Section 8 (enacted on March 22, 2010).[2] Chapter 2 generally makes certain changes to the benefit plans for public employees, including, pensions and health care. Section 8 of Chapter 2 imposes any changes to SHBP negotiated by the majority representatives for State employees on all State and local employees. P.L. 2010, c. 2, § 8. Plaintiffs claim Section 8 violates: (1) Article I, Paragraph 19 of the New Jersey Constitutionwhich grants public employees the right to organize, and present grievances and proposals, regarding the terms and conditions of employment, to their employers through representatives of their own choosingbecause it imposes upon State (and local) employees SHBP changes negotiated by the majority representative selected by another State employee negotiating unit, rather than "of their own choosing;"[3] and (2) the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Consequently, plaintiffs seek a declaratory judgment that Section 8 is unconstitutional and injunctive relief.
On September 24, 2010, the State filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. See R. 4:6-2(e). It argues Section 8 does not alter the rights of State or local public employees under Article I, Paragraph 19 of the New Jersey Constitution. It also contends Section 8 complies with the Due Processes guarantees in the United States Constitution, because it provides adequate notice regarding when, how, and to whom, it applies.

I.

BACKGROUND

A. THE CHALLENGED LEGISLATION

On February 8, 2010, the Legislature introduced Senate Bill Numbers 2, 3, and 4 ("Bill 2," "Bill 3," and "Bill 4," respectively). These bills, and their Assembly versions, were passed by both Houses of the Legislature, and signed into law by Governor Christopher J. Christie ("Governor Christie") on March 22, 2010.
This suit focuses specifically on the validity of P.L. 2010, Chapter 2, Section 8.[4]
*174 The three bills implement the recommendations and findings of a comprehensive evaluation by the Joint Legislative Committee on Public Employee Benefits Reform (the "Committee").[5] The Committee was established to "terminate abuses of the pension system and control the cost of providing public employee retirement, health care and other benefits." Executive Summary, Public Employees Benefits Reform Final Report, at 1 (2006) ("Final Report"). The legislation is designed to improve the fiscal strength of State and local governments, reduce taxpayer burdens, and ensure the health and pension systems remain viable for current and future employees. See generally, Final Report.
In the present case, plaintiffs challenge only Section 8 of P.L. 2010, Chapter 2. Section 8 provides that:
[a]ll changes in the provision of health care benefits through . . . [SHBP and SEHBP] . . . negotiate[ed] . . . [by] the State and its employees . . . shall be made applicable to . . . participating employers and their employees at the same *175 time and in the same manner as to State employees.
[P.L. 2010, c. 2, § 8.]

B. FACTUAL AND PROCEDURAL HISTORY

CWA is an "international labor organization representing over 700,000 workers employed in telecommunications, publishing, broadcasting, cable TV, journalism, manufacturing, health care, customer service and public service." It represents various State and local employees in New Jersey. It is the exclusive majority representative of four State employee negotiation units: (1) the administrative clerical; (2) professional; (3) primary level supervisors; and (4) higher level supervisors.
As majority representative, CWA negotiates CNAs with public employers on behalf of the employees it represents. These CNAs cover the terms and conditions of employment.[6]
Council 1 is "the exclusive majority representative of approximately 10,000 employees of the State of New Jersey in the Health, Care, and Rehabilitation Services unit." The State employees in Council 1's negotiation unit participate in SHBP for their health benefits. Similarly, Council 1 represents employees at the county, municipal, State college, and university levels, many of whom also receive their health benefits through SHBP.
Council 73 is one of the affiliated councils with Council 1. It "consists of 64 locals that represent various local government employers and State appointing authorities." Like Council 1, some of the negotiations units represented by Council 73's affiliated locals receive their health benefits through SHBP.
The State is responsible for administering SHBP through the SHBC. SHBC is comprised of five members.[7]N.J.S.A. 52:14-17.27. More specifically, SHBC enters into contracts with private entities to assist in the administration of SHBP. N.J.S.A. 52:14-17.27; see N.J.S.A. 34:13A-5.3.
The complaint states that employees represented by CWA choose their representatives through procedures administered by the Public Employee Relations Commission ("PERC"). See N.J.S.A. 34:13A-5.2-5.3. The majority representative and the respective public employer negotiate the terms and conditions of employment for the particular negotiations unit. Those negotiations are memorialized in CNAs.[8]
The complaint alleges the following:

Count I  P.L. 2010, Chapter 2, Section 8 violates public employees' right to present their grievances through representatives of their own choosing under Article I, Paragraph 19 of the New Jersey Constitution. By imposing state-level negotiated changes to SHBP at the same time and in the same manner on *176 local employees, Section 8 allegedly strips other State employees from having the majority representatives of their own choosing present their grievances and proposals to the State. Plaintiffs claim it also unconstitutionally imposes the added burden on majority representatives of having to negotiate on behalf of other State and local employees who are not part of its negotiating unit.

Count II  Section 8 is also allegedly void for vagueness in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs claim it contains no guidance as to which CNA containing changes to SHBP negotiated by the majority representative of any of the 19 State employee groups will be binding on all other State and local employees. It also fails to clearly explain how such changes can be imposed on all employees at the same time and in the same manner given that multiple majority representatives allegedly could be entering into different CNAs with the State with different effective dates. Finally, Section 8 does not clearly state whether the negotiated changes to SHBP must be agreed to by a single majority representative or whether the State must obtain the agreement of all majority representatives for State employee negotiations units before the Commission can impose such changes on all participating employers.
Consequently, plaintiffs request that the court declare Section 8 unconstitutional and enjoin its implementation.
The State filed a motion to dismiss the complaint for failure to state a claim on September 24, 2010. In the brief accompanying its motion, the State argues: (1) plaintiffs cannot meet their burden needed to overcome the high presumption of validity accorded legislative enactments; (2) Article I, Paragraph 19 of the New Jersey Constitution only grants public employees the right to present grievances and proposals through representatives of their own choosing, but does not grant them the right to collectively negotiate the terms and conditions of employment; (3) Section 8 does not change State or local employees' ability to exercise their Article I, Paragraph 19 right, nor any rights under the Employer-Employee Relations Act ("EERA"), N.J.S.A. 34:13A-1 to -14; (4) Section 8 merely reiterates the Legislature's longstanding goal of assuring uniformity in health benefits for all government employees, which the New Jersey Supreme Court has upheld; and (5) participation in SHBP is voluntary, leaving dissatisfied employees free to withdraw from it.
Similarly, the State contends Section 8 is not void for vagueness. U.S. Const. amend. XIV, § 1. Specifically, the State argues Section 8:(1) makes clear that all changes negotiated in all CNAs between State employees' majority representatives and the State, rather than any single representative, will be uniformly imposed on all participating employees; and (2) has no impact on State or local employees' ability to select their own representatives or present grievances and proposals. Rather, it merely memorializes the State's longstanding goal of uniformity of benefits among all employees, which the State argues was required by statute even before Section 8 was enacted. See N.J.S.A. 52:14-17.36 (terms of State Health Benefits Act ("SHBA") . . . are to be "construed as to participating [local] employers and to their employees . . . the same as for the State employees . . .").[9]
*177 On November 4, 2010, plaintiffs filed a brief in opposition to the State's motion to dismiss. Plaintiffs begin by clarifying that the Article I, Paragraph 19 right they claim Section 8 infringes upon is not a purported constitutional right to collectively negotiate. Rather, they focus on the constitutional right to select "representatives of their own choosing" who will present their grievances and proposals to their public employers.
They further claim Section 8 has nothing to do with preempting a term and condition of employment, because it fails to fix a term and condition of employment "expressly, specifically and comprehensively," such that it removes all discretion from the public employer with respect to that term or condition of employment. See Bethlehem Twp. Bd. of Educ. v. Bethlehem Township Education Association, 91 N.J. 38, 44, 449 A.2d 1254 (1982). Instead, Section 8 purportedly "delegates to two partiesthe State and one majority representative selected by the State"the authority to negotiate health benefits on behalf of employees who have chosen different majority representatives.
Plaintiffs also reject the State's assertion that the Legislature's goal of uniformity in health benefits excuses its alleged infringement of public employees' rights. Plaintiffs attempt to distinguish the cases[10] the State relied upon by claiming the courts in those cases were not presented with the Article I, Paragraph 19 issue, and that whereas the courts relied upon the employers' ability to voluntarily withdraw from SHBP, public employees allegedly cannot do so in the present case.
Moreover, plaintiffs also argue that Section 8 is invalid because it is essentially a legislatively-imposed "parity clause." A parity clause is a provision in a CNA with one union which ties the terms and conditions of employment of the employees covered by that agreement to the terms and conditions of employment negotiated by another union. PERC has declared parity clauses unconstitutional. See e.g., City of Plainfield, P.E.R.C. No. 78-87, 4 N.J.P.E.R. 225 (¶ 4130 1978). Section 8 purportedly serves as a parity clause because it imposes on all state and local employees participating in SHBP, "the same benefits negotiated by the State with the unspecified State union." Similarly, it allegedly burdens the single majority representative with negotiating on behalf of employees that are not part of its negotiating unit and who did not select it as their majority representative.[11]
Finally, plaintiffs reiterate that Section 8 violates the Due Process provisions in the United States Constitution because it fails to specify: (1) how SHBC will determine which of the several separate CNAs with State employees will control the health benefits made applicable to all participating employers; (2) whether the State must *178 obtain agreements to SHBP changes from all majority representatives or merely a single majority representative; and (3) how the changes at the State level can be implemented "at the same time and in the same manner" on local employees, in light of the different dates embodied in the State's CNAs with the nineteen State-level negotiating units.
On November 10, 2010, the State filed a reply brief to plaintiffs' opposition. It discussed several reasons why Section 8 is constitutional.
First, the State argues: (1) plaintiffs have failed to satisfy their high burden to overcome the presumed validity of P.L. 2010, Chapter 2, Section 8; (2) the New Jersey Supreme Court interpreted "representatives of their own choosing" in Article I, Paragraph 19 to mean the ability to choose representatives free of coercion, Lullo v. International Association of Fire Fighters, Local 1066, 55 N.J. 409, 422-23, 262 A.2d 681 (1970);[12] (3) Section 8 allegedly only constrains SHBC, but does not impose any restrictions upon public employees or their representatives; (4) Section 8 does not impose any additional requirements on a majority representative of either State or local employees; and (5) Section 8 has no impact whatsoever on (a) majority representatives' ability to represent their negotiations units, (b) public employees' ability to select their own representatives free of coercion; nor (c) each State employees' majority representatives' ability to enter into CNAs with the State.
Finally, the State relies on New Jersey case law upholding the constitutionality of uniformly imposing negotiated changes to health benefits in SHBP. See, e.g., School Boards, supra, 183 N.J.Super. at 224, 443 A.2d 761.
Third, to rebut the parity clause argument, the State represents that while PERC's decisions, such as City of Plainfield, supra, 4 N.J.P.E.R. 225, may constrain negotiations between public employers and majority representatives, they do not limit the Legislature's ability to pass constitutional legislation. That is, the State rejects the assertion that Section 8, which was passed by the Legislature, not a party to any CNA, is in any way a parity clause.
For similar reasons, the State argues Section 8 is not void for vagueness, because it makes perfectly clear that it applies all changes from all CNAs between State employees' majority representatives and the State on all government employees, at the same time and in the same manner for State and local employees alike.
The present motion to dismiss addresses similar issues to those raised in the simultaneously-but-separately issued opinion in the related consolidated matters. See generally, Companion Opinion, supra, (slip op. at n. 2). The present case challenges only Section 8. The court will first address the Article I, Paragraph 19 challenges to Section 8. To the extent the simultaneously issued opinion addresses the Due Process challenges to Section 8, that language is repeated here for the convenience of the reader.

II.

STANDARD OF REVIEW
A motion to dismiss for failure to state a claim is governed by Rule 4:6-2(e), which provides:

*179 [i]f on a motion to dismiss based on the defense numbered in (e), matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by R. 4:46 [governing summary judgment motions] and all parties shall be given reasonable opportunity to present all material pertinent to such a motion.
As set forth more fully below, the court finds that P.L.2010, Chapter 2, Section 8 is valid and plaintiffs' claims lack merit. Section 8 does not change public employees' ability to exercise their rights under Article I, Paragraph 19 of the New Jersey Constitution, nor their statutory right to collectively negotiate under the EERA. Section 8 also does not constitute a parity clause. Finally, Section 8 is not unconstitutionally vague and otherwise complies with the Due Process requirements of the United States Constitution.
The holding herein is based on a statutory interpretation of the challenged legislation after a review of the applicable statutes, regulations and case law. It is not based on information beyond the pleadings. Furthermore, the court rejects the notion by plaintiffs that discovery is necessary to render a final determination.

III.

LEGAL ANALYSIS

A. PLAINTIFFS HAVE FAILED TO SATISFY THE HEAVY BURDEN NECESSARY TO OVERCOME THE PRESUMPTION OF VALIDITY ACCORDED LEGISLATIVE ENACTMENTS

When faced with a constitutional challenge, a statute is presumed constitutional. To overcome this presumption, the plaintiff must demonstrate that there are no conceivable grounds to support its validity. Brown v. State, 356 N.J.Super. 71, 811 A.2d 501 (App.Div.2002).
This deferential standard is rooted in separation of power principles, which are even stronger when a court is asked to invalidate, rather than simply interpret, legislative intent. Such review is considered a "most delicate task" to be done "with extreme self restraint, and with a deep awareness that the challenged enactment represents the considered action of a body composed of popularly elected representatives." N.J. Sports & Exposition Auth. V. McCrane, 61 N.J. 1, 8, 292 A.2d 545 (1972) ("judicial decisions from the time of Chief Justice Marshall reveal an unswerving acceptance of the principle that every possible presumption favors the validity of an act of the Legislature"), appeal dismissed sub nom., Borough of E. Rutherford v. N.J. Sports & Exposition Auth., 409 U.S. 943, 93 S.Ct. 270, 34 L.Ed.2d 215 (1972).
Out of respect for the democratic process and in recognition of the Legislature's status as a co-equal branch of government, statutes under attack are "`entitled to great weight in the courts.'" N.J. Sports & Exposition Auth. v. McCrane, 119 N.J.Super. 457, 474, 292 A.2d 580 (Law Div.1971), aff'd, 61 N.J. 1, 292 A.2d 545 (1972) (quoting Roe v. Kervick, 42 N.J. 191, 229-30, 199 A.2d 834 (1964)). Significantly, courts will "not second[-]guess the Legislature's `policy decisions' regarding `economic, social, and philosophical'" issues. Brown, supra, 356 N.J.Super. at 80, 811 A.2d 501 (quoting Reiser v. Pension Comm'n of the Employees Ret. Sys., 147 N.J.Super. 168, 183, 370 A.2d 902 (Law Div.1976)). If courts were to do so, they would be impermissibly "act[ing] as a super-legislature." Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 222, 486 A.2d 305 (1985) (citing Burton v. *180 Sills, 53 N.J. 86, 96, 248 A.2d 521 (1968), appeal dismissed, 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969)).
"Legislative enactments are presumed to be valid and the burden to prove invalidity is a heavy one." Bell v. Twp. of Stafford, 110 N.J. 384, 394, 541 A.2d 692 (1988). A statute's presumptive validity "can be rebutted only upon a showing that the statute's repugnancy to the Constitution is clear beyond a reasonable doubt." Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 285, 716 A.2d 1137 (1998), certif. denied, 527 U.S. 1021, 119 S.Ct. 2365, 144 L.Ed.2d 770 (1999). The burden lies "on the party challenging" the legislation "to demonstrate clearly that it violates a constitutional provision." Newark Superior Officers Ass'n, supra, 98 N.J. at 222, 486 A.2d 305; see also Lewis v. Harris, 188 N.J. 415, 459, 908 A.2d 196 (2006).
Moreover, the Legislature has broad discretion in determining the parameters of legislation. Brown, supra, 356 N.J.Super. at 86, 811 A.2d 501; Harvey v. Essex County. Bd. of Freeholders, 30 N.J. 381, 390, 153 A.2d 10 (1959). "In considering constitutionality of legislation[,] courts do not weigh its efficacy or wisdom." State Farm Mut. Auto. Ins. Co. v. State, 124 N.J. 32, 45, 590 A.2d 191 (1991).
In the case at bar, plaintiffs claim P.L. 2010, Chapter 2, Section 8, violates Article I, Paragraph 19 of the New Jersey Constitution and the Due Process Clauses of the United States Constitution. The court is not persuaded. As set forth more fully below, the court holds that the challenged legislation is valid.

B. SECTION 8 DOES NOT VIOLATE ARTICLE I, PARAGRAPH 19 OF THE NEW JERSEY CONSTITUTION

Plaintiffs claim P.L. 2010, Chapter 2, Section 8 violates Article I, Paragraph 19 of the New Jersey Constitution.
The New Jersey Constitution, Article I, Paragraph 19, states:
Persons in private employment shall have the right to organize and bargain collectively. Persons in public employment shall have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing.
The aforementioned language clearly creates a critical distinction between private and public employment, securing greater rights to private sector employees than to public employees. See Lullo, supra, 55 N.J. at 416, 436-39, 262 A.2d 681.
Article I, Paragraph 19 raises two important issues. First, it makes clear that public employees in New Jersey do not have a constitutional right to collectively bargain; it only guarantees them the "right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing." N.J. Const., Art. I, ¶ 19; see Mount Holly Twp. Bd. of Educ. v. Mount Holly Twp. Educ. Ass'n, 199 N.J. 319, 327, 972 A.2d 387 (2009) ("[a]lthough [public employees] do not have the right to `bargain collectively' like their counterparts in the private sector . . . public employees may instead engage in `collective negotiations'" as per the EERA, N.J.S.A. 34:13A-1 to -14 (citations omitted)).
In Mount Holly, the New Jersey Supreme Court explained that under the EERA, "public employees may select representatives to act on their behalf as `the exclusive representatives for collective negotiations concerning the terms and conditions *181 of employment of the employees.'" Ibid. (quoting N.J.S.A., 34:13A-5.3).[13]
Second, Article I, Paragraph 19 indirectly implicates the issue of which items are negotiable or non-negotiable.[14] Terms and conditions of employment are generally negotiable, whereas matters that would otherwise "impair the determination of governmental policy" are non-negotiable. In re Local 195, IFPTE, 88 N.J. 393, 402, 443 A.2d 187 (1982).
Furthermore, statutes or regulations addressing a term or condition of employment preempt negotiation, if the term and condition of employment is set forth "expressly, specifically and comprehensively." Bethlehem Twp. Bd. of Educ., supra, 91 N.J. at 44, 449 A.2d 1254 (citations omitted). To preempt, the language cannot leave "room for discussion as to what is required of both the employer and the employee." Id. at 48, 449 A.2d 1254. "Hence, a preempting regulation must be complete; it must say all there is to be said." Ibid.
In the present case, the court rejects plaintiffs' arguments that Section 8 violates Article I, Paragraph 19 of the New Jersey Constitution or the EERA. Plaintiffs claim Section 8 infringes upon the constitutional right of public employees to present grievances and proposals to their employers through representatives of their own choosing. They argue that Section 8: (1) violates such right by imposing the changes negotiated by the majority representative for one State employees' negotiations unit on other State and local employees; and (2) that it burdens that single majority representative with the additional responsibility of negotiating on behalf of State and local employees who did not select it.
This belies the clear language of Section 8. It provides that:
[a]ll changes in the provision of health care benefits through the program that are included in collective negotiations agreements between the State and its employees entered into on or after the effective date of P.L. [2010], c. [2] (pending before the Legislature as this bill) shall be made applicable by the commission to participating employers and their employees at the same time and in the same manner as to State employees. This subsection shall be applicable to the State Health Benefits Program and to the School Employees' Health Benefits Program.
The language clearly explains that "all changes" in health benefits that are part of CNAs "between the State and its employees" will be applied "to participating employers and their employees." This wording is crucial for several reasons.
First, it establishes that all negotiated health benefits changes at the State level are uniformly imposed on all employers and employee participating in SHBP. Contrary to plaintiffs' arguments, Section 8 does not only apply the changes negotiated by a single majority representative of State employees. Rather, it uniformly imposes all changes negotiated by all majority *182 representatives' CNAs at the State level.
Second, the language in Section 8 has nothing to do with the ability of State (or local) employees to select their own majority representatives. Consistent with Article I, Paragraph 19 of the New Jersey Constitution, each majority representative is still able to present grievances and proposals on behalf of its respective State employees' negotiating unit. Plaintiffs fail to point to any specific language in Section 8 that would strip State employees of their right to select their own majority representatives or require any given majority representative to negotiate on behalf of any negotiations unit other than its own.
Third, the State correctly argues that Section 8 does not change or impose any new responsibilities on State or local employees, or their majority representatives. It simply reiterates SHBC's obligation to provide uniformity in benefits. Moreover, if employees are not satisfied with the benefits provided in SHBP or SEHBP, they are "free to withdraw from it at any time consistent with [their] obligations under any existing collective negotiation agreements." School Boards, supra, 183 N.J.Super. at 224, 443 A.2d 761; see N.J. State Policemen's Benevolent Ass'n, Local # 42, supra, 153 N.J.Super. at 155, 379 A.2d 285 ("[p]articipation in the State Health Benefits Program . . . is made available to local government units at their voluntary election").
That the language in Section 8 makes no changes to the rights or responsibilities of public employees or their majority representatives is further supported by the Legislature's longstanding goal of providing uniformity in health benefits among all government employees. Such history is clear from comparing the statutory provisions applicable to the State SHBC to the amendatory language in Chapter 2.
For example, prior to the passage of Chapter 2, N.J.S.A. 52:14-17.28b(a) provided as follows:
With respect to State employees for whom there is no majority representative for collective negotiations purposes, the commission may, in its sole discretion, modify the respective payment obligations. . . for the State and such employees in a manner consistent with the terms of any collective negotiations agreement binding on the State.
Chapter 2 retains this exact same language without revision.
Similarly, N.J.S.A. 52:14-17.36 provides that:
The [State Health Benefits Commission]. . . is hereby authorized to prescribe rules and regulations satisfactory to the carrier or carriers under which employers may participate in the health benefits program provided by that act. All the provisions of that act will, except as expressly stated herein, be construed as to participating employers and to their employees and to dependents of such employees the same as for the State, employees of the State and dependents of such employees.
Again, Chapter 2, in general, and Section 8, specifically, make no changes to this language.
Furthermore, N.J.S.A. 40A:10-25 expressly discusses the Legislature's mechanisms for tracking employers' contracts and practices, and obtaining recommendations from employers about such contracts and the coverage therein, in order to "achieve uniformity of coverage and benefits for employees throughout the State." (emphasis added).
In New Jersey State Policemen's Benevolent Ass'n, Local # 42, supra, 153 N.J.Super. at 155, 379 A.2d 285, SHBC precluded an employer from implementing *183 health coverage for retired employees and their dependents, because it was "made available only to some, and not all, eligible retired employees and their dependents." The Appellate Division upheld that decision, discussing the interpretation of N.J.S.A. 52:14-17.28. That statute provides that: "[t]he Commission shall not enter into a contract under [State Health Benefits Act] . . . unless coverage is available to all eligible employees." N.J.S.A. 52:14-17.28.
In New Jersey State Policemen's Benevolent Association, Local # 42, supra, 153 N.J.Super. at 155-56, 379 A.2d 285, the Appellate Division noted that the Legislature has had a longstanding commitment to ensuring uniformity in benefits among all level of public employees in the State. The plaintiff in that case argued SHBC's action in requiring uniformity in benefits contravened various statutory provisions. See e.g., N.J.S.A. 52:14-17.29(F) (authorizing the Commission to purchase drug prescription contracts as needed to implement a duly executed CNA). The Appellate Division rejected this argument. New Jersey State Policemen's Benevolent Ass'n, Local # 42, supra, 153 N.J.Super. at 155-56, 379 A.2d 285. Importantly, if the Legislature's goal of uniformity infringed upon Article I, Paragraph 19 of the New Jersey Constitution, surely the plaintiff would have made such a constitutional argument before relying solely on statutory challenges. It did not. The reason it did not do so is presumably because the legislative requirement of uniformity did not upset any rights under Article I, Paragraph 19 of the New Jersey Constitution. The same is true in the case at bar.
The Appellate Division reached a similar conclusion in School Boards, supra, 183 N.J.Super. 215, 443 A.2d 761. In that case, the Appellate Division upheld SHBC's ruling that an increase in the health insurance benefit for State employees also had to be applied to local employees. Id. at 217, 443 A.2d 761. The Appellate Division agreed with SHBC's statutory interpretation that SHBP requires a uniform benefits schedule for all participating employees, both State and local.
In School Boards, the majority representative for a given group of State employees negotiated an increase in health insurance benefits for State employees effective January 1, 1982. Ibid. SHBC explained that a similar increase in benefits would be required for local government employees effective May 1, 1982. Ibid. It reasoned that N.J.S.A. 52:14-17.36 "mandates a uniform benefit schedule for local government employees and State employees." Ibid. (citations omitted). SHBC had required uniform benefits among all levels of public employees for seventeen years at the time School Boards was decided. Id. at 223, 443 A.2d 761. The Appellate Division declared that this "long period of consistent construction by an administrative agency in the field of its expertise is entitled to be given great weight by the courts." Ibid. (citations omitted) ("[b]oth the legislative history and administrative practice support a reading of [SHBA] which mandates the provision of uniform benefits").[15]
In the present case, despite plaintiffs' arguments, there is no evidence that Section 8 changes the way public employees negotiate their health benefits compared to *184 the way in which this was done prior to the implementation of Section 8. Nor is there any evidence here to negate the deference due to the administrative agency's interpretation of the statute it is charged with administering and enforcing. See School Boards, supra, 183 N.J.Super. at 223, 443 A.2d 761.
Rather, the clear language of Section 8, relevant case law, and the Legislature's history of requiring uniformity in health benefits mandate that Section 8 be upheld as constitutionally valid under Article I, Paragraph 19 of the New Jersey Constitution, because it merely reiterates that which has long been the case when it comes to public employees' rights vis-à-vis SHBP. Moreover, to the extent public employees are dissatisfied with their health benefits under SHBP, they are free to waive coverage through their employer pursuant to Chapter 2, Section 11 (employees may waive coverage through their public employers in exchange for the lesser of 25% of the cost savings for their employer or $5000).

1. Parity Clause

In addition to the arguments above, CWA contends Section 8 is invalid because it is essentially a legislatively-imposed "parity clause." The court disagrees. A parity clause is a provision in a CNA with one union which ties the terms and conditions of employment of the employees covered by that agreement to the terms and conditions of employment negotiated by another union. PERC has declared such clauses unconstitutional. See e.g., City of Plainfield, supra, 4 N.J.P.E.R. at 229. According to plaintiffs, Section 8 serves as a parity clause, because it imposes on all State and local employees participating in SHBP, "the same benefits negotiated by the State with the unspecified union."
Parity clauses are disfavored because they "interfere with good faith negotiations by permitting a second employee organization, not a party to the negotiations, to affect [such] negotiations." City of Jersey City, P.E.R.C. No. 91-58, 17 N.J.P.E.R. 60 (¶ 22026 1990). Similarly, parity clauses have been held to be illegal because they automatically extend to a second negotiations unit the benefits negotiated for the employees represented by the majority representatives of the first negotiations unit. City of Newark, P.E.R.C. No 2007-74, 32 N.J.P.E.R. 47 (2006).
In City of Plainfield, supra, 4 N.J.P.E.R. at 229, PERC rejected the use of parity clauses, finding that "[p]arity clauses in public sector contracts have long been held illegal." The Commission explained that
[a] parity clause obligates an employer to grant to the contracting employee organization during its term, any more favorable benefit in salary or fringes it negotiates with another organization . . . The mere existence of such a clause has been found to chill the free exchange between a public employer and an employee organization by permitting a third employee organization, not a party to the negotiations, to have an impact on those negotiations.
[Ibid. (citations omitted).]
As in the other PERC cases discussing parity clauses, in City of Plainfield, PERC explained that the real problem with parity clauses is that they "interfere[] with the right to negotiate in good faith." Id. at 256.
While claiming Section 8 constitutes a parity clause because it requires the same benefits be applied to all employees, plaintiffs acknowledge PERC decisions, striking down parity clauses, are based on "an *185 analysis of an employer's obligation to negotiate in good faith under the EERA and not on an analysis of the right of employees to select their own representatives under Article I, [Paragraph] 19." They maintain, however, that: (1) the rationale from parity clause cases applies "with equal, if not greater, force when analyzing the constitutional rights of public employees;" (2) Section 8 deprives public employees in negotiation units, other than the purported single majority representative entering into a CNA with the State, the right to select their own representatives; and (3) Section 8 divests "employees represented by the State[-]`selected' union of the right to have their chosen representative present proposals only for them."
Plaintiffs' arguments are unavailing for several reasons. First, Section 8 was not created to limit the negotiating capacity of a public employer when entering into multiple CNAs with different public employee negotiating units. Rather, as discussed above, the purpose of Section 8 is to increase uniformity in health benefits and employees' contributions thereto.
Second, Section 8 is not merely a contractual clause, such as a parity clause, created by an employee organization which is a party to CNA. Conversely, it is legislation meant to save costs by increasing uniformity and administrative efficiency. Whereas a true parity clause may tie the parties' hands when it comes to their ability to negotiate in good faith in a CNA, see City of Plainfield, supra, 4 N.J.P.E.R. at 256, that is not the case with Section 8. Unlike with parity clauses, Section 8 was passed by the Legislature, which is neither a public employer nor a party to any CNA. By requiring uniform health benefits among all public employees, the Legislature has not impacted the ability of State employees to select representatives of their own choosing and to have such representatives negotiate with the State.
Third, plaintiffs' own arguments acknowledge that PERC struck down true parity clauses in CNAs to protect "the right to negotiate in good faith." Ibid. In plaintiffs' brief, they recognize that PERC has never held parity clauses are invalid because they infringe upon public employees' rights under Article I, Paragraph 19 of the New Jersey Constitution. Despite this, plaintiffs assume Section 8 will somehow create a system in which the State negotiates only with one majority representative, rather than all of the nineteen majority representatives for the State employee negotiation units. However, nothing in Section 8 supports such an assumption,[16] nor do plaintiffs provide any legal authority for it.
The State correctly argues that even if Section 8 were deemed to require only one particular State union to negotiate health benefits for all other public employees, that would still not rise to a constitutional issue under Article I, Paragraph 19. That constitutional provision guarantees public employees the ability to choose their own majority representatives. In Lullo, the New Jersey Supreme Court analyzed the meaning of the term "representatives of their own choosing." 55 N.J. at 409, 422-23, 262 A.2d 681. The Court held that it is "a phrase of art, designed to convey the *186 intention that the employees' selection of a bargaining representatives should be an uncoerced and free choice." Ibid. (citing, inter alia, N.L.R.B. v. Newark Morning Ledger Co., 120 F.2d 262 (3d Cir.), certif. denied 314 U.S. 693, 62 S.Ct. 363, 86 L.Ed. 554 (1941)).[17]
Therefore, even assuming arguendo Section 8 were deemed akin to a parity clause, it would not violate any constitutional rights. It would at most impinge upon the statutory right to collectively negotiate under the EERA, N.J.S.A. 34:13A-5.3. Whatever rights may have been granted by the Legislature with the passage of N.J.S.A. 34:13A-5.3, the Legislature has the authority to modify or eliminate through subsequent constitutional legislation, just as it has done here by enacting Chapter 2, Section 8. While PERC's decisions, such as City of Plainfield, may constrain negotiations between a public employer and the majority representative for the public employee, such decisions do not constrain the Legislature's ability to pass valid constitutional legislation. Consequently, the court rejects plaintiffs' parity challenge and holds that Section 8 is valid.
For all these reasons, Section 8 is valid and completely complies with Article I, Paragraph 19 of the New Jersey Constitution.

C. VOID FOR VAGUENESS DOCTRINE

"A law is void `if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" State v. Schad, 160 N.J. 156, 733 A.2d 1159 (1999) (quoting Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573 (1983)). For the reasons set forth below, the court rejects the argument that Section 8 is unconstitutionally vague.
In Town Tobacconist, the New Jersey Supreme Court noted:
Clear and comprehensible legislation is a fundamental prerequisite of due process of law. . . . Vague laws are unconstitutional even if they fail to touch constitutionally protected conduct, because unclear or incomprehensible legislation places both citizens and law enforcement officials in an untenable position. Vague laws deprive citizens of adequate notice of proscribed conduct, and fail to provide officials with guidelines sufficient to prevent arbitrary and erratic enforcement.
[94 N.J. at 118, 462 A.2d 573 (internal citations omitted).]
A statute can be challenged as either "facially" vague or vague "as applied." State v. Rogers, 308 N.J.Super. 59, 65, 705 A.2d 397 (App.Div.1998). A statute that is challenged as facially vague may be voided if it is "impermissibly vague in all its applications," that is, "`there is no conduct that it proscribes with sufficient certainty.'" Id. at 65-68, 705 A.2d 397 (citing Matter of C.V.S. Pharmacy Wayne, 116 N.J. 490, 501, 561 A.2d 1160 (1989); quoting State v. Cameron, 100 N.J. 586, 593, 498 A.2d 1217 (1985)). A statute can be challenged "as applied" if the law does not, with sufficient clarity, prohibit the conduct against which it is sought to be enforced. State v. Afanador, 134 N.J. 162, 175, 631 A.2d 946 (1993) (citing Cameron, supra, 100 N.J. at 593, 498 A.2d 1217).
*187 In Cameron, the New Jersey Supreme Court stated:
To summarize, a law that is challenged for facial vagueness is one that is assertedly and permissively vague in all applications. A statute that is challenged as applied, however, need not be proven vague in all contexts, but must be shown to be unclear in the context of the particular case. In either a facially or as applied vagueness attack, the level of judicial scrutiny and degree of required clarity will depend on the purpose of the statute, the context in which the law is challenged, the conduct that is subject to its strictures, the nature of the punishment that is authorized, and finally, the potential impact of the statute upon activities and interest that are constitutionally protected.
[100 N.J. at 594, 498 A.2d 1217.]
It is well settled that "[a]bsent any explicit indications of special meanings, the words used in a statute carry their ordinary and well-understood meanings." Afanador, supra, 134 N.J. at 171, 631 A.2d 946; see also Schad, supra, 160 N.J. at 170, 733 A.2d 1159 (recognizing that "[t]he established rules of statutory construction govern the interpretation of a municipal ordinance"). Statutory language should also be considered in the context of the whole act, and accorded a common sense meaning that advances the legislative purpose. Voges v. Borough of Tinton Falls, 268 N.J.Super. 279, 285, 633 A.2d 566 (App.Div.1993), certif. denied, 135 N.J. 466, 640 A.2d 848 (1994). "Put simply, courts should avoid interpreting a statute in a manner that leads to an absurd, anomalous, or unreasonable result". City of Camden v. Kenny, 336 N.J.Super. 53, 64, 763 A.2d 777 (App.Div.2000).
The court notes that when a statute is challenged as either facially vague or vague as applied, different levels of "definitional clarity" are required depending on the type of statute under scrutiny. Cameron, supra, 100 N.J. at 592, 498 A.2d 1217. For example, penal laws are subjected to a "sharper scrutiny and given more exacting and critical assessment. . .", as opposed to those enactments with civil penalties, due to the differences in likelihood and consequences of any misunderstanding. Ibid. As P.L. 2010 is not a penal law, it may be analyzed under the less demanding level of scrutiny.
Accordingly, despite the assertion by plaintiffs that Chapter 2, Section 8 is void for vagueness,[18] it is plain on its face: it reiterates the Legislature's longstanding goal of requiring uniform health benefits among all levels of public employees, both State and local. The court finds that none of the language in Section 8 is so unusual or obscure that people of common intelligence must guess at its meaning.
As noted by the State, the language of P.L. 2010, Chapter 2 precisely identifies that "all [negotiated] changes" to SHBP made via CNAs between the nineteen majority representatives for the various State employees' negotiations units are to be applied on all public employees, "at the same time and in the same manner." P.L. 2010, c. 2, § 8. The court is persuaded that the language in Section 8 is not constitutionally void for many of the same reasons *188 discussed above in support of why the language of Section 8 does not intrude upon any rights under Article I, Paragraph 19 of the New Jersey Constitution. Section 8 in no way changes the rights and responsibilities of public employees, their majority representatives, or public employers. State level employees remain able to select their majority representatives through which they negotiate the terms and conditions of employment with the State, including health benefits in SHBP. Local employees' majority representatives never negotiated at the State level.
Additionally, although only State employees' majority representatives will be negotiating with the State, this has always been the case; local employees have never negotiated with the State. That has always been the nature of the statutorily guided majority representative selection process. However, local employees will continue to have the ability to negotiate with their public employers over the effects of the changes made at the state level. See N.J. State Policemen's Benevolent Ass'n, Local # 42, supra, 153 N.J.Super. at 155-56, 379 A.2d 285.
Considering these facts and the overarching purpose of Chapter 2, Section 8, as discussed above, there is nothing vague about this legislation. Specifically, P.L. 2010 fairly informs public employees, and any member of the general public who may read the statute, of what is required of SHBC. Importantly, Section 8 changes nothing; it merely memorializes the State's longstanding goal of ensuring uniformity in health benefits among all levels of public employers. Therefore, it should not be held unconstitutionally vague. Finally, the Legislature need not, and indeed, could not, provide the answer to every conceivable question. A statute need not be so exhaustive in order to survive a vagueness challenge.

IV.

CONCLUSION
For all of the reasons above, the court holds that P.L. 2010, Chapter 2, Section 8, fully comports with all constitutional and statutory requirements. Plaintiffs have failed to meet the high burden necessary to overcome the statute's presumed validity. Specifically, the legislation does not violate Article I, Paragraph 19 of the New Jersey Constitution, nor is it void for vagueness; rather, it fully complies with the Due Process requirements in the Fifth and Fourteenth Amendments to the United States Constitution. Accordingly, the court grants defendant's motion to dismiss the complaint with prejudice.
NOTES
[1] The matter, originally filed in the Chancery Division, was transferred to the Law Division after consultation between Judge Feinberg, A.J.S.C. and Judge Jacobson, P.J.Ch.
[2] The court also issued a companion opinion today in related consolidated cases. See N.J. State Firefighters' Mut. Benevolent Ass'n v. State, Docket No. L-1004-10 (Law Div. Jan. 19, 2011) ("Companion Opinion").
[3] Although plaintiffs in the companion case generally challenge all of P.L. 2010, they specifically claim Section 8 infringes upon the rights of local employees to present grievances and proposals through representatives of their own choosing. See generally, Companion Opinion, supra, (slip op. at n. 2). In contrast, plaintiffs in the current case focus on the Article I, Paragraph 19 rights of State employees.
[4] As mentioned above, in the companion litigation, which commenced on April 23, 2010, plaintiffs challenge multiple provisions of P.L. 2010, Chapters 1-3. The relevant provisions of the other chapters of P.L. 2010 are briefly summarized here as background for CWA's challenges.

Bill 2, recorded as P.L. 2010, Chapter 1, provides for changes to pension benefits.
Bill 3, recorded as P.L. 2010, Chapter 2, and the primary focus in the litigation addressed by the Companion Opinion, generally provides for changes to the way health benefits are paid for by all public employees. Specifically, it provides as follows:
(1) Sections 1-6: all new employees in SHBP and SEHBP will be required to pay 1.5% of their monthly pension allowance in retirement toward post-retirement medical benefits;
(2) Section 7: the choice of available plans for employees participating in SHBP and SEHBP is limited;
(3) Section 8: changes in the provision of health care benefits negotiated by State employees in SHBP will be imposed, without negotiation, to local government employees at the same time and in the same manner as State employees;
(3) Sections 9-10: new employees' enrollment in SHBP is limited to full-time employees whose hours of work are fixed at 35 or more per week, a full-time employee of the State or a full-time employee of an employer other than the State, whose hours of work are fixed by the governing body at not less than 25 hours per week, or an appointive or elective officer, an employee of the State, or an employee of an employer other than the State who has or is eligible for health benefits coverage in SHBP;
(5) Section 11: the waiver of health insurance for state employees and state police is set at 25% of the amount saved by the employer, or $5000, whichever is less;
(6) Section 12: duplicate coverage for active and retired employees is prohibited;
(7) Sections 13-16: active employees and new employees, including employees of state, local government, county colleges, and the Board of Education will be required, absent waiver under Chapter 2, Sections 13-18, after the expiration of any applicable binding collective negotiation agreement, to contribute (a) 1.5% of their base salary toward the cost of health care coverage provided by their employers, notwithstanding any other amount that may be required additionally by a collective negotiation agreement, and (b) 1.5% of their monthly pension allowance in retirement towards their health benefits; and
(8) Sections 17-18, the waiver of health insurance for county, municipal and county college employees is set at 25% of the amount saved by the employer or $5000, whichever is less.
Bill 4, recorded as P.L. 2010, Chapter 3, makes miscellaneous changes to public employee benefits. Most notably, it caps the sick-leave and carry-forward vacation time for new employees.
[5] Chapter 1 implemented reforms to several pension systems, P.L. 2010, Chapter 2 improved the administration and cost effectiveness of the health benefits program, and Chapter 3 remedied excess payments for various employee benefits.
[6] The four current State-level CNAs will expire on June 30, 2011.
[7] The five members of the SHBC are the State Treasurer, the Commissioner of Banking and Insurance, the Chair of the Civil Service Commission, a representative of State employees, and a representative of local employees.
[8] Although exclusive majority representatives and public employers cannot enter into an agreement requiring employees to obtain health benefits from a specific private or public insurance carrier, they can enter into an agreement regarding the level of health benefits to be provided by the employer during the terms of the contracts. Such level of benefits negotiations include the amounts of co-pays, deductibles, and co-insurance that employees have to pay. The terms in CNAs cannot be changed without the parties' mutual consent. See N.J.S.A. 34:13A-5.3.
[9] The State also notes that the Legislature has the authority to preempt negotiations on specific terms and conditions of employment. See State Troopers Fraternal Ass'n v. State, 149 N.J. 38, 51, 692 A.2d 519 (1997).
[10] Specifically, the following cases are in contention: N.J. Sch. Bds. Ass'n v. State Health Benefits Comm'n, 183 N.J.Super. 215, 443 A.2d 761 (1982) ("School Boards"); N.J. State Policemen's Benevolent Ass'n, Local # 42 v. N.J. State Health Benefits Comm'n, 153 N.J.Super. 152, 379 A.2d 285 (1977); and Bethlehem Twp. Bd. of Educ., supra, 91 N.J. 38, 449 A.2d 1254.
[11] To flesh out these claims, plaintiffs argue Section 8 is akin to a parity clause, because it forces State unions to negotiate both on behalf of State employees who did not select it as their majority representative, as well as similarly situated local employees participating in SHBP and SEHBP. This, they claim, infringes upon the right of employees to select their own representative and the majority representatives right to only present proposals on behalf of its own negotiating unit.
[12] The Lullo Court observed that the phrase "representatives of their own choosing" is a term of art, the meaning of which was well established by decades of national labor law. Lullo, supra, 55 N.J. at 422, 262 A.2d 681.
[13] For further discussion of the difference between the rights granted to public employees in Article I, Paragraph 19 of the New Jersey Constitution and the EERA, see generally, Companion Opinion, (slip op. at 53-83).
[14] The courts have interpreted this indistinct category of negotiations to include those subjects that "intimately and directly affect the work and welfare of public employees." State v. State Supervisory Employees Ass'n, 78 N.J. 54, 67, 393 A.2d 233 (1978). These include hours, compensation, physical arrangements and facilities, and customary fringe benefits. Bd. of Educ. of Englewood v. Englewood Teachers Ass'n, 64 N.J. 1, 6-7, 311 A.2d 729 (1973).
[15] The New Jersey Supreme Court has also upheld the uniformity required by SHBP in State v. State Troopers Fraternal Ass'n, 91 N.J. 464, 471, 453 A.2d 176 (1982), noting that the "efficiency in administration alone" militates against the interpretation allowing "a hodgepodge of benefits among the various bargaining units."
[16] As discussed above, Section 8 states that it applies to "all changes" negotiated by State employees' "majority representatives." P.L. 2010, c. 2, § 8 (emphasis added). Use of the word "all" and the plural form of representative lead to the opposite conclusion from plaintiffs' arguments. Namely, Section 8 is meant to acknowledge that there could be many different CNAs between the State and the majority representatives of its employees, but that all negotiated changes to the health benefits in SHBP will be applied to all employees-State and local alike.
[17] As discussed above, this court also agrees with the State's statutory interpretation of Section 8. Section 8 does not mention or impact a majority representative's duty to represent all of the employees in its bargaining unit, pursuant to N.J.S.A. 34:13A-5.3, nor vest a majority representative with any additional rights or burdens. It imposes no requirements whatsoever on employees, their majority representatives, or employers; it only requires SHBC to ensure uniformity of health benefits.
[18] Specifically, as discussed above, plaintiffs claim Section 8 is unconstitutionally vague because it fails to provide sufficient guidance as to which majority representative of the various State employee negotiations units will have the health care terms negotiated in its CNA imposed upon all other public employees. Plaintiffs also allege Section 8 does not make clear how negotiated changes to the SHBC can be imposed upon local employees at the same time and in the same manner as for State employees, when the various CNAs between the State and its employees may have differing timing and applicable dates.