**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0074-17T2

LINDA J. PEPE, KIM M. REILLY,
TERRY A. DOBLOW, SR., and
THE NEW JERSEY EDUCATION
ASSOCIATION,

      Plaintiffs-Appellants,

v.

STATE OF NEW JERSEY,
PHILIP D. MURPHY as GOVERNOR
of the STATE OF NEW JERSEY,
ELIZABETH MAHER MUOIO,
TREASURER, STATE OF NEW
JERSEY, DEPARTMENT OF THE
TREASURY, DIVISION OF PENSIONS
& BENEFITS, and THE BOARD OF
TRUSTEES OF THE NEW JERSEY
SCHOOL EMPLOYEES' HEALTH
BENEFITS COMMISSION,

      Defendants-Respondents.

_____

Argued January 22, 2019 – Decided May 14, 2019

Before Judges Messano, Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2504-15.

Flavio L. Komuves argued the cause for appellants (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Richard A. Friedman, of counsel and on the briefs; Flavio L. Komuves and Edward M. Suarez, Jr., on the briefs).

Jean P. Reilly, Assistant Attorney General, argued the cause for respondents (Gurbir S. Grewal, Attorney General, attorney; Jean P. Reilly, of counsel and on the brief; Elspeth L. Faiman Hans, Valentina M. Di Pippo, Angela J. Bezer, Ragner Jaeger, and Alexander J. Falciani, Deputy Attorneys General, on the brief).

PER CURIAM

This appeal requires us to consider once again provisions of the Pension and Health Care Benefits Act, L. 2011, c. 78 (Chapter 78). On its effective date, Chapter 78 immediately imposed premium-sharing obligations on public employees' health benefits pursuant to a matrix or "grid" based on an employee's annual earnings, L. 2011, c. 78, § 39 (codified as N.J.S.A. 52:14-17.28c), implemented over four years. L. 2011, c. 78, § 40 (codified as N.J.S.A. 52:14-17.28d). The grid also applied to school employees who "accrue[d] [twenty-five] years of service credit" after Chapter 78's effective date, "and retire[d] on or after that . . . date . . . ." Ibid. (codified as N.J.S.A. 52:14-17.28d(b)(2)(c)).

A-0074-17T2

By its own terms, Chapter 78 included a sunset provision, meaning the grid expired on June 28, 2015, four years after the statute's effective date.  L. 2011, c. 78 § 83.  Chapter 78 explicitly exempted only one category of public workers from its premium-sharing obligations — those "who ha[d] [twenty] or more years of creditable service" on June 28, 2011, Chapter 78's effective date. L. 2011, c. 78, § 40(b)(3) (now codified as N.J.S.A. 52:14-17.28d(b)(3)).

However, the Legislature delayed commencement of Chapter 78's grid for those public employees subject to an existing collective negotiations agreement (CNA).  N.J.S.A. 52:14-17.28d(c).  For those employees, the grid became effective "upon the expiration of any applicable binding [CNA] . . . ."  Ibid. Regardless, once public employees were "subjected to the contribution requirements," the Legislature compelled every public employee to reach full "contribution levels . . . ."  Ibid.  And, "notwithstanding" the sunset provision in Chapter 78, or the "expiration date" of any CNA, the Legislature required "full implementation" of the grid.  Ibid.

To address situations in which a CNA lasted beyond those four years, the Legislature enacted § 77 of Chapter 78, (now codified as N.J.S.A. 52:14-17.28e).  That statute requires implementation of the grid's contribution scheme for all public employees that were "subject to any [CNA] in effect on" Chapter

3

78's effective date, and for those in bargaining units then in negotiations "for the next [CNA] . . . ." Ibid. The provisions implementing the grid expressly apply notwithstanding the grid's statutory expiration in 2015 "until the full amount of the contribution required . . . has been implemented . . . ." Ibid. The statute also provides:

> A public employee whose amount of contribution in retirement was determined in accordance with section 40 . . . shall be required to contribute in retirement the amount so determined pursuant to section 40 . . . notwithstanding that section 40 . . . has expired, with the retirement allowance, and any future cost of living adjustment thereto, used to identify the percentage of the cost of coverage.
>
> [Ibid.]

"After full implementation," contribution levels "shall then be subject to collective negotiations . . . ." Ibid.

Plaintiffs Linda J. Pepe, Kim M. Reilly, and Terry A. Dolbow, Sr., all retired after July 1, 2015, and are members of the School Employees' Health Benefits Program (SEHBP). See N.J.S.A. 52:14-17.46.1. They did not have twenty years of service credit as of June 28, 2011, and therefore could not benefit from Chapter 78's "grandfather" provision. See N.J.S.A. 52:14-17.28d(b)(3). Each plaintiff, however, purchased additional service credit and had twenty-five

A-0074-17T2

years or more of service credit upon retirement, which, in all three instances, occurred after the expiration of Chapter 78's grid provisions.

The State of New Jersey began deducting premium-sharing payments from plaintiffs' retirement pension benefits. Together with the New Jersey Education Association (NJEA), plaintiffs filed suit against the State and various public officials and offices alleging defendants "denied [them] premium-free health insurance coverage" in retirement.

Prior Litigation

This was not the first time the issue arose. In 2012, NJEA and other groups challenged various provisions of Chapter 78. N.J. Educ. Ass'n v. State, No. L-771-12 (Law Div. June 13, 2013) (NJEA I).[1] They argued, in part, that the Legislature had granted vested members of the Teachers' Pension and Annuity Fund (TPAF) medical benefits in retirement without premium sharing. See N.J.S.A. 52:14-17.46.9(d) (2007) (providing "there shall be no premium sharing or periodic charges for school employees in retirement once they have

---

[1] Although citing an unpublished opinion is generally forbidden, we do so here to provide a full understanding of the issues presented and pursuant to the exception in Rule 1:36-3 that permits citation "to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law . . . ." See Badiali v. N.J. Mfrs. Ins. Grp., 429 N.J. Super. 121, 126 n.4 (App. Div. 2012), aff'd, 220 N.J. 544 (2015).

met the criteria for vesting for pension benefits . . . ."). The plaintiffs argued that § 40 divested TPAF members of their free medical benefits in retirement. The State moved to dismiss the complaint, asserting in part that because the grid expired by its own terms on June 28, 2015, any future harm to NJEA members was speculative.

Accepting the State's assertion, Judge Mary C. Jacobson concluded that the plaintiffs "failed to demonstrate in what manner any employee, whether covered by a collective bargaining agreement or not, who is entitled to benefits as a retiree, and can or will retire on or before June 30, 2015, will be affected and harmed by [§ 40]." She dismissed their complaint in this regard for lack of standing.

Current Litigation

The deduction of premium-sharing payments from the since-retired individual plaintiffs' pension benefits, of course, supplied the individualized harm previously missing, and plaintiffs' 2015 complaint alleged defendants' implementation of § 40 violated their constitutionally-protected "vested contractual rights" under N.J.S.A. 52:14-17.46.9(d), and the due process provisions of the Federal and State Constitutions. Plaintiffs also alleged the State was estopped from asserting § 40 applied to those who retired more than

four years after the enactment of Chapter 78, because the State asserted in NJEA I that § 40 expired by its own terms.

Defendants again moved to dismiss, and plaintiffs cross-moved for partial summary judgment. In a detailed oral opinion, Judge Jacobson granted defendants' motion and dismissed the complaint with prejudice.

Judge Jacobson noted that Chapter 78 contained only one explicit provision exempting school employees from contribution obligations, i.e., N.J.S.A. 52:14-17.28d(b)(3), which exempted only those who had twenty years or more of service on Chapter 78's effective date. The judge observed that while she accepted the State's argument in NJEA I regarding § 40's expiration, this case involved retirees whose benefits became payable after expiration and implicated the "post-grid provision of Chapter 78," in particular § 77 of Chapter 78, (codified as N.J.S.A. 52:14-17.28e).

Judge Jacobson properly framed plaintiffs' contention. Because "school retirees do not have [CNAs] regarding health benefits in retirement[,]" N.J.S.A. 52:14-17.28e did not apply, and, upon expiration of the grid, "they reverted back to premium-free health benefits in retirement . . . ." After citing appropriate case law regarding the standards for dismissing a complaint for failure to state a claim under Rule 4:6-2(e), the judge considered defendants' motion.

A-0074-17T2

She noted the Legislature specifically decided that § 39 (N.J.S.A. 52:14-17.28c), the grid which computed the amount of each employee's contribution based on earnings, applied to school employees. See ibid. ("As used in this section, 'cost of coverage' means the premium or periodic charges for medical and prescription drug plan coverage, . . . provided under the . . . [SEHBP] . . . ."). The judge then noted that § 40 (N.J.S.A. 52:14-17.28d) specifically addressed school retirees who retired after the effective date of Chapter 78, making them subject to the premium-sharing deductions. See N.J.S.A. 52:14-17.28d(b)(1) (requiring contributions, "[n]otwithstanding the provisions of any other law to the contrary," from certain "public employees . . . through the withholding . . . from the monthly retirement allowance, toward the cost of health care benefits coverage for the employee in retirement and any dependent provided under the . . . [SEHBP] . . . ."); see also N.J.S.A. 52:14-17.28d(b)(2)(c) (including in the list of public employees, school employees "who accrue [twenty-five] years of service credit on or after [the] effective date [of Chapter 78] and retire on or after that effective date . . . .").

Judge Jacobson then acknowledged that Chapter 78 significantly amended the lynchpin of plaintiffs' arguments, N.J.S.A. 52:14-17.46.9(d), which now reads:

> Notwithstanding any law to the contrary and except as provided by amendment by [Chapter] 78, the payment in full of premium or periodic charges for eligible [SEHBP] retirees and their dependents . . . shall be continued without alteration or interruption and there shall be no premium sharing or periodic charges for <u>certain</u> school employees in retirement once they have met the criteria for vesting for pension benefits . . . .
>
> [<u>Ibid.</u>][2]

Judge Jacobson accepted the State's argument that this amended language — "<u>certain</u> school employees" — meant only school employees with twenty years of service credit on the effective date of Chapter 78 would continue to receive lifetime medical benefits in retirement without contribution.

In sum, Judge Jacobson rejected plaintiffs' arguments that because § 77 tied post-grid contributions to the expiration of CNAs, and because plaintiffs were not subject to CNAs specifically governing medical benefits, plaintiffs no longer had premium-sharing obligations in retirement. The judge concluded such an interpretation was contrary to the Legislature's intent.

Judge Jacobson noted that while § 77 was ambiguous, the "equity of the statute" was an aid in discerning legislative intent. Citing <u>New Jersey State Policemen's Benevolent Ass'n Local No. 42 v. New Jersey State Health Benefits</u>

---

[2]  The underlined words were inserted by § 54 of Chapter 78.

Commission, and Communications Workers of America v. State, Department of Treasury, the judge reasoned that the Legislature intended to make benefits, including medical benefits, uniform among all public workers in the State. 153 N.J. Super. 152, 155 (App. Div. 1977); 421 N.J. Super. 75, 105 (Law Div. 2011). Citing other relevant case law regarding canons of statutory interpretation, Judge Jacobson reasoned:

> [T]he grid was a transition period . . . but not intended to be temporary as to just one particular group of employees, the school employees[,] that somehow were put in a more favored status than other employees. It doesn't make sense in light of the whole thrust of the statute.
>
> . . . [T]he legislation . . . envisioned the continuation of contributions . . . after expiration of the grid and [N.J.S.A. 52:14-17.28d(b)(2)] provides that school employees who accrue [twenty-five] years of service credit after the effective date must contribute to the cost of their health benefits in retirement and that would really be eviscerated by plaintiffs' interpretation of [§] 77 . . . .

Having resolved plaintiffs' statutory arguments, Judge Jacobson turned to their constitutional claims. She first recognized the presumption of validity applied to legislative enactments, and the heavy burden a challenger must bear to demonstrate the law's invalidity. See, e.g., Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 285 (1998) (quoting Harvey v. Bd. of Chosen

10

Freeholders of Essex Cty., 30 N.J. 381, 388 (1959)) ("The strong presumption of constitutionality that attaches to a statute can be rebutted only upon a showing that the statute's 'repugnancy to the Constitution is clear beyond a reasonable doubt.'").

Citing Berg v. Christie, 225 N.J. 245 (2016), and Burgos v. State, 222 N.J. 175 (2015), Judge Jacobson rejected plaintiffs' claim that Chapter 78 unconstitutionally infringed upon their contractual rights to free medical benefits in retirement pursuant to N.J.S.A. 52:14-17.46.9(d). She also rejected plaintiffs' argument that the withholding of money from their pension benefits was an unconstitutional taking under article I, paragraph 20 of the New Jersey Constitution and the Fifth and Fourteenth Amendments of the United States Constitution, or that the State violated plaintiffs' substantive due process rights, noting the "State ha[d] established the significant . . . and growing burden of providing health benefits to retirees, including school retirees." The State, therefore, had a rational basis to require retirees to contribute to those costs.

Lastly, the judge rejected plaintiffs' claim that the State was estopped from collecting contributions, particularly because of the position it espoused in NJEA I regarding expiration of the grid. Judge Jacobson explained the focus in NJEA I was § 40's implementation schedule. She acknowledged her "prior

holding," which concluded the plaintiffs lacked standing, "may very well have been in error," because the current plaintiffs are "in a similar position to the plaintiffs in the earlier case . . . [but] now . . . affected by the continuing contributions." Nonetheless, the judge reasoned that estoppel only applied to a prior judgment on the merits, which NJEA I was not, and courts rarely applied the doctrine against the State. While accepting plaintiffs' "frustration," the judge concluded that any reliance on NJEA I by plaintiffs when purchasing extra service credit in order to retire, did not estop the State from its obligation to collect contributions. She entered the order under review.

Plaintiffs now appeal. They argue that the judge's interpretation of Chapter 78 was contrary to its plain language, because: 1) pursuant to § 83, the grid expired on June 28, 2015, prior to plaintiffs' retirement; and 2) § 77, which delayed implementation of the grid for those employees subject to CNAs, does not apply to them, since school CNAs never governed health care benefits. Plaintiffs contend Judge Jacobson relied upon legislative intent and "the 'equity of the statute' doctrine" in construing these provisions of Chapter 78, instead of focusing on its plain, unambiguous language. Plaintiffs also argue their complaint stated viable causes of action for violations of their due process rights, the takings provision of the State and Federal Constitutions, and the Civil Rights

12

Act, N.J.S.A. 10:6-1 to -2. Lastly, plaintiffs maintain, based upon the State's position in NJEA I, the doctrine of judicial estoppel bars the State from deducting contributions.

We have considered these arguments in light of the record and applicable legal standards. We affirm substantially for the reasons expressed by Judge Jacobson in her thorough, well-reasoned and supported oral decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0074-17T2